THERESA MONAGHAN *vs.* KEITH OIL CORPORATION.

MARTHA REBACK *vs.* SAME.

ORPHA F. DEVAUX *vs.* SAME.

REGINALD G. DEVAUX *vs.* SAME.

JOHN ROGAN *vs.* SAME.

MARY E. WALSH *vs.* SAME.

Bristol.    October 27, 1932. — November 28, 1932.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Practice, Civil,* Exceptions: whether error harmful; Requests, rulings and instructions. *Evidence,* Relevancy and materiality, Competency, Testimony at former trial. *Negligence,* Motor vehicle, In use of way, Contributory, Of guest.

At the trial of an action of tort for personal injuries alleged to have been sustained in a collision between an automobile and an oil tank motor truck owned by the defendant and driven by his employee, the plain-

tiff, in cross-examination of the employee, introduced a record of his conviction for operating a motor vehicle at an unreasonable or excessive rate of speed. In redirect examination of the witness by the defendant's counsel, the witness was permitted, subject to exception by the plaintiff, to testify in substance that on the occasion which led to the conviction he was not driving an oil tank motor truck. The judge at the time of admission of the evidence stated that no evidence would be admitted to explain the complaint on which the witness had pleaded guilty, and in his charge stated that the evidence of the record of conviction was admitted solely "for the purpose, if it does, of impeaching the credibility of" the witness, and illustrated what that meant. *Held*, that although it was error to admit the evidence, above described, in redirect examination of the witness, the error was not prejudicial to the plaintiff.

At the trial above described, the position and nature of tire marks of the defendant's truck on the pavement were material and there was testimony respecting them. An expert in the control and repair of automobiles, who had testified on the subject for the defendant, was asked, subject to an exception by the plaintiff, whether the marks had been made by a wheel rotating or in some other way, and answered ". . . as though you had used a rubber, something on the surface, leaving lots of particles of the black rubber on the cement, as it rubbed along the cement." *Held*, that the evidence was relevant and material and properly was admitted.

A witness at the trial above described, who in direct examination had described the position of the truck and of the automobile as to marks on the highway and had said that the automobile was on its left hand side of the road, in cross-examination stated that at a previous trial of the case he had testified where the automobile was, but that he did not remember testifying how far it was from the tracks. It then was agreed that in the transcript of the evidence at the previous trial certain questions were asked and answered by the witness. In redirect examination, subject to exception by the plaintiff, the defendant's counsel was permitted to read the testimony of the witness at the previous trial. *Held*, that no error was disclosed.

The plaintiff in the action of tort above described was one of several guests in the automobile. Actions were brought by all the guests against the defendant and were tried together. There was evidence that the driver of the automobile was negligent, that the driver of the defendant's motor truck was negligent, and also that the plaintiff could have seen the truck approaching, had an opportunity to warn the operator of the automobile, and failed to do so. The judge charged the jury in substance that the plaintiff, to recover, must be in the exercise of due care; that, if the plaintiff knew of the impending danger, had reason to think that the driver of the automobile did not know of it, and failed to warn the driver, it might "be contended and argued" that the plaintiff was not in the exercise of due care; that the plaintiff was not called upon to inform the driver of a danger of which the driver was "apparently cognizant"; that, if the plain-

tiff was exercising the care of an ordinarily prudent person in all the circumstances, he was in the exercise of due care; and that, if he were found to be in the exercise of due care, he could recover, even if both drivers were negligent. The plaintiff excepted "to the charge of the court which would prevent the passengers from recovering, even if the defendant's operator were negligent, providing any of the passengers should have given warning and had an opportunity and failed to do so." *Held,* that the instructions of the judge were full and accurate, and the exception must be overruled.

SIX ACTIONS OF TORT, seeking recovery by reason of a collision of an automobile owned and driven by the plaintiff in the first action and a truck owned by the defendant corporation and driven by its servant or agent. In the first action, the plaintiff sought to recover both by reason of damage to her automobile and by reason of personal injuries. In the second, fourth, fifth and sixth actions, the plaintiffs, respectively, sought recovery for personal injuries. In the third action, the father of the plaintiff in the fourth action sought consequential damages. Writs in the first four actions dated August 20, 1926, and in the fifth and sixth actions dated January 15, 1927.

In the Superior Court, the actions were tried together before *Collins,* J. Material evidence is described in the opinion. At the close of the evidence, the plaintiffs asked for the following rulings:

"8. There was not sufficient evidence to justify the jury in making any finding that the passengers were not in the exercise of due care.

"9. Upon all the evidence, the jury should find that Mary Walsh was not negligent."

[A request, similar to that numbered 9, was made as to each of the plaintiffs Reginald G. DeVaux, Martha Reback, and John Rogan. These were numbered 10-12, inclusive.]

"14. There is little that the guest or passenger in the inside of a sedan driven by one of presumed skill and experience is expected to do for his own safety.

"15. There was nothing to indicate that the passengers distrusted or ought to have doubted the skill or attention of the driver, or that there was any duty resting on them to act."

The requests were refused.

A material portion of the charge of the judge to the jury was as follows:

"There is no contention that any of these passengers had any control over Miss Monaghan at the time of the happening of this accident. Neither is there any contention that these passengers made an absolute surrender of their care in the hands of Miss Monaghan . . . so we come down to this question: Were the passengers in the exercise of due care? Now, although the standard of due care may not be as high with passengers as it is with the operator of the car, still they must be in the exercise of due care. If, for example, any of the passengers in this car should have given a warning to Miss Monaghan, which warning Miss Monaghan did not seem to know or appreciate and they had opportunity so to do and they failed so to do, it may be contended and argued that they were not in the exercise of due care. Now, whether or not they ought or ought not to have given a warning, depends again upon the particular facts in the case. You have the evidence here and you have the picture of just how this accident happened in the spoken word.

"While it is the duty of the passenger to exercise a degree of care for his own safety and while he should have warned the driver of any danger that he observed if he thought the driver was ignorant of it and should have done anything else that was reasonably necessary for his own protection, the passenger is not called upon to inform the driver of a danger which the driver seemed to know, and by that is meant danger of which the driver is apparently cognizant. So you see, gentlemen, that the passengers in the car, namely, in the Monaghan car, must be in the exercise of due care, too, before you come to the next step in their case and if you find they were in the exercise of due care, you come to the next problem, whether or not their injuries were due to the carelessness of Keith representing, or operating, the defendant's car.

"Now, assume you say that the Keith Company, by virtue of the alleged careless operation of its car on the night

in question, was careless and that Miss Monaghan was careless, can the passengers recover? Yes, they can recover if they were in the exercise of due care and that is for you to determine under all the circumstances and in passing upon that question bear in mind this big test, were these passengers exercising the care of ordinarily prudent people under all the circumstances? If they were, they were in the exercise of due care. If they were not, they were not in the exercise of due care."

The jury found for the defendant in each action, and the plaintiffs alleged the exceptions respecting evidence described in the opinion, to the refusal to rule in accordance with the requests quoted above, and also "to the charge of the court which would prevent the passengers from recovering, even if the defendant's operator were negligent, providing any of the passengers should have given warning and had an opportunity and failed to do so."

The case was submitted on briefs.

*W. A. Torphy,* for the plaintiffs John Rogan and Mary E. Walsh.

*H. W. Radovsky, I. H. Simon, & E. Dashoff,* for the other plaintiffs.

*T. F. O'Brien,* for the defendant.

CROSBY, J. These are actions of tort arising out of a collision of an automobile and a truck owned by the defendant and operated by one Keith, its employee. The accident occurred about half past one in the morning of April 7, 1926, on Riverside Avenue, in Somerset, in this Commonwealth, not far from the entrance to the Brightman Street bridge. Riverside Avenue runs north and south; the bridge runs east and west, beginning at Riverside Avenue on the Somerset side and going east to Fall River. The plaintiff Theresa Monaghan was the owner and driver of the automobile. The other plaintiffs, except Orpha F. DeVaux, were passengers in the automobile invited by the owner to attend an entertainment in Boston the evening before. They were returning to their homes in Fall River when the accident occurred. There was testimony offered by the plaintiffs to the effect that while they were travelling

south on the right side of Riverside Avenue and before they had reached a point where the avenue turns into the Brightman Street bridge, the truck "suddenly loomed up before them," three or four feet away, and hit the left forward end of the automobile causing its left forward wheel to collapse and injuring them severely. They all testified that they were looking ahead as they approached the bridge until the time of the accident; that they saw no light on the front of the truck at the time of the collision and heard no warning of the approach of the truck until just before the collision; that three of the plaintiffs "were knocked unconscious" and the automobile was wrecked.

There was evidence that Riverside Avenue at the place of the accident was fifty-four feet wide and the Brightman Street bridge was forty-four feet wide. The only witnesses who saw the accident were the persons in the automobile and the driver of the truck. The latter testified that the truck was twenty-three or twenty-four feet long and at the time of the accident carried two thousand ninety-six gallons of oil and weighed fourteen tons; that it was equipped with two headlights, one green light on the extreme left side, and a tail light, and that all the lamps were lighted and had been tested the night of the accident; that when he reached the Brightman Street bridge he was travelling on the right hand side of the road at a speed of about twelve miles an hour; that he saw the automobile when it was about three hundred yards away from the point of collision and at that time it seemed to be travelling on the right hand side of the road; that he did not see it again until it was about thirty feet away "going directly toward him," and travelling faster than the truck, although he could not state its rate of speed; that it was directly in front of the truck and coming toward it travelling on its left side of the road; that when the truck was part way around the curve entering upon Riverside Avenue, the automobile was coming toward the truck. This witness further testified that while going over the bridge he was travelling about a foot from the curbing; that when he saw the automobile "he threw his wheels to the right, put his brake on and threw out his

clutch and then the two cars came together; that his left front, the spring on the left front side and the left front wheel and the fender were struck; that his hands were thrown and twisted off the wheel and his feet were thrown off the clutch and brake and he fell forward, his chest striking the steering wheel"; that the front of the truck "shot out at the left at a very sharp angle; that when he realized what had happened he pulled the emergency in, pushed out the clutch and threw the gear shift into neutral and stopped the truck; that there was a scrape mark on the concrete that started ten feet from the curb and went in a very sharp angle to the left and led to the left front wheel; [that] the left front wheel would not rotate because it was underneath the frame and the frame of the truck was directly on the wheels; that as the truck was making the curve he noticed that the . . . [automobile] had taken a diagonal turn cutting the corner for the purpose of going onto the bridge." Two bridge tenders testified that they did not see the accident, but after it occurred they saw tire marks of the truck indicating it was travelling on its right hand side of the road as it was coming along the bridge and turning onto Riverside Avenue, and then swerved sharply to the left "practically at right angles with the direction it was travelling just before." They further testified that they saw the truck pass them on the bridge shortly before the accident and it was then lighted. It is recited in the record that there was other evidence offered by the defendant as to the tire marks of the truck, which tended to show that it was travelling on its right hand side of the road, and where the vehicles were after the accident. One of these bridge tenders testified that he swept up glass broken from the windshield of the automobile on the left of the center line of both streets in the direction in which the automobile was travelling. Some of the testimony was to the effect that the automobile was on its right side of the road, and other testimony was that it was on its left. In each action the jury returned a verdict for the defendant. The cases are before this court on exceptions to the admission and exclusion of evidence, to the refusal to give certain rulings

requested, and to parts of the judge's charge. The exceptions so far as argued will be considered.

Upon cross-examination of the operator of the truck, the plaintiffs introduced in evidence three records of the conviction of the witness for operating a motor vehicle at an unreasonable or excessive rate of speed; in each case a fine was imposed. These records were properly admitted. On redirect examination by the defendant's counsel the witness was permitted to testify in substance, subject to the plaintiffs' exception, that on the three occasions when he was convicted he was not driving an oil tank truck. The judge at the time of admission of the evidence stated that no evidence would be admitted to explain the various complaints on which he had pleaded guilty. Again in the charge the judge said: "Evidence was offered here in behalf of the plaintiff of certain records of conviction against Stanley Keith. I told you at the time that those were offered, that the only reason why I could admit that particular kind of evidence was for the purpose, if it does, of impeaching the credibility of Stanley Keith's testimony. What does that mean in plain language? It means this. Do those records as such help you in passing upon the trustworthiness and the dependability of his testimony, or do they impeach it? Do they discredit it? Bear in mind, gentlemen, because these records are offered that is no evidence that on this particular night that the truck of the defendant company was operated in a careless manner by this Stanley Keith. You have seen him on the stand. You have had an opportunity to size him up. Take that evidence with anything else that has appeared in the case and see whether or not in your opinion that evidence does tend to discredit him; in other words, discredit his testimony in this case and that is for you to say." Although the evidence was immaterial and inadmissible, *Commonwealth* v. *Galligan,* 155 Mass. 54, *Lamoureux* v. *New York, New Haven & Hartford Railroad,* 169 Mass. 338, we are of opinion that its admission was not harmful to the plaintiffs. If, as we must assume, the jury followed the instructions given, the evidence of the conviction of the witness for the crimes charged, as

permitted by G. L. (Ter. Ed.) c. 233, § 21, was given its full force and effect. This exception must be overruled.

A witness called by the defendant as an expert in the control and repair of automobiles testified that after the accident he examined tire marks of the truck in the highway; that they "did not turn the regular way, they turned very sharp . . . ." He was then asked in substance whether the mark had been made by a wheel rotating or in some other way. This question was admitted subject to the plaintiffs' exception. The answer was "as though you had used a rubber, something on the surface, leaving lots of particles of the black rubber on the cement, as it rubbed along the cement." This evidence was admissible as it tended to show the position of the truck and the effect upon it of the collision.

The chief of police of Swansea testified that after the collision he went to the place of the accident; he described the position of the truck and of the automobile as to marks on the highway, and said that the automobile was on its left hand side of the road. On cross-examination he said that at a previous trial of the case he had testified where the automobile was, but he did not remember testifying how far it was from the tracks. It was then agreed that in the transcript of the evidence at the previous trial certain questions were asked and answered by the witness. On redirect examination, subject to the exception of the plaintiffs, the defendant's counsel was permitted to read the testimony of the witness at the previous trial. In this there was no error.

The plaintiffs excepted to the refusal of the judge to grant their ninth, tenth, eleventh and twelfth requests for rulings. They need not be considered in detail; it is plain that they were rightly refused, as all of them presented questions of fact for the jury to decide upon conflicting evidence. The fourteenth and fifteenth requests also presented questions of fact for the jury; besides facts were assumed in these requests which were not admitted. No question of law is presented by them.

The plaintiffs excepted to that part of the charge which

would prevent those who were guests from recovering even if the defendant's operator was negligent, providing any of the guests should have given warning to the driver of the automobile and failed to do so. The jury were correctly instructed, in substance, that if any of the passengers in the automobile had an opportunity to give warning to the driver and such warning was not given, it could be found that such plaintiff was not in the exercise of due care. These plaintiffs all testified that they were looking ahead as they approached the bridge until the time of the accident; that they saw no light on the truck at the time of the collision and heard no warning of any kind of the approach of the truck until just before the collision. There was no evidence that any of them gave warning to the driver of the automobile. The defendant offered evidence tending to show that all the lamps on the truck were lighted, and that it could be seen for a distance of three hundred yards before the accident occurred. If this evidence was believed the jury were warranted in finding that these plaintiffs were not in the exercise of due care. If in the exercise of reasonable care they should have seen the approaching truck and failed to direct the driver's attention to it, they were not entitled to recover. It could have been found that these plaintiffs surrendered all care of themselves to the driver. Upon such a finding, if she was negligent, such negligence is to be imputed to the plaintiffs. The instructions of the judge upon this question were full and accurate. The exception to the charge must be overruled. *Lambert* v. *Eastern Massachusetts Street Railway*, 240 Mass. 495, 499, 500. *Oppenheim* v. *Barkin*, 262 Mass. 281. *Caron* v. *Lynn Sand & Stone Co.* 270 Mass. 340, 345. *Laffey* v. *Mullen*, 275 Mass. 277. The cases are distinguishable from *Harter* v. *Boston Elevated Railway*, 259 Mass. 433, *Gallup* v. *Lazott*, 271 Mass. 406, *Keyes* v. *Checker Taxi Co.* 275 Mass. 461, *Schusterman* v. *Rosen*, 280 Mass. 582. If, as the jury could have found, the lamps on the truck were lighted and it was being driven before and at the time of the accident on its right side of the road at a reasonable speed, and the automobile was proceeding on its left side

of the road at a speed of twenty-five miles an hour and negligently collided with the truck, it is plain that the verdicts of the jury in favor of the defendant were correct. The cases cannot be distinguished from many others where it has been held that the ·due care of the plaintiff and negligence of the defendant were for the jury. *Crimmins* v. *Armstrong Transfer Express Co.* 217 Mass. 155, 157. *Maidman* v. *Rose,* 253 Mass. 594. *Hicks* v̇. *H. B. Church Truck Service Co.* 259 Mass. 272, 276, 277. *Hutchinson* v. *H. E. Shaw Co.* 273 Mass. 51, and cases cited.

We find no error of law in the conduct of the trial.

*Exceptions overruled.*