HERBERT W. HARLOW *vs.* KENNETH F. CORCORAN.

ABBIE F. HARLOW *vs.* SAME.

Plymouth.    March 6, 1935. — March 27, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Negligence*, Motor vehicle, In use of way, Contributory.

On all the evidence at the trial together of two actions for injuries resulting from a collision in 1930 between an automobile operated by the defendant and an automobile operated by one of the plaintiffs, accompanied by the other plaintiff, at an intersection of streets which the plaintiffs' automobile entered first, it could not properly have been ruled as matter of law that either of the plaintiffs was guilty of contributory negligence.

Two ACTIONS OF TORT. Writs dated September 4, 1931.

The actions were tried together in the Superior Court before *Collins*, J. Material evidence is stated in the opinion. The judge denied a motion by the defendant in each action that a verdict be ordered in his favor. There were verdicts for the plaintiff Herbert W. Harlow aggregating $13,150, of which he afterwards remitted $6,000; and a verdict for the plaintiff Abbie F. Harlow in the sum of $5,000. The defendant alleged an exception in each action.

The case was submitted on briefs.

*R. H. Willard & A. S. Allen*, for the defendant.

*E. G. Townes & A. Kupka*, for the plaintiffs.

PIERCE, J. These are two actions of tort arising out of an automobile accident. In the action brought by Herbert W. Harlow, he seeks to recover for personal injuries, for damage to his automobile and for consequential damages. In the action by Abbie F. Harlow she seeks to recover for personal injuries received when the automobile in which she was a passenger was run into by an automobile alleged to have been operated negligently by the defendant on November 25, 1930. In each action the defendant's answer was a general denial and contributory negligence. The cases were tried together to a jury in the Superior Court. At the close of the evidence the defendant presented a motion for a directed verdict in each case. These motions were denied and the defendant duly excepted. The jury returned a verdict for the plaintiff in each case. The record contains all the evidence which bears upon the issues of the defendant's negligence and the due care of each plaintiff.

The accident occurred on November 25, 1930, at about 7:15 in the evening, at the corner of Belmont Avenue and Belmont Street, and at or near the corner of Manomet Street and Belmont Street in Brockton. Belmont Street runs east and west; Belmont Avenue and Manomet Street run about north and south. The plaintiff Herbert W. Harlow, hereinafter called the plaintiff, testified, in substance, as follows: On the evening of the accident he and his wife, in an automobile, started for his son's home in Bridgewater. They went out West Elm Terrace to West Elm Street, then to

Belmont Avenue, then south on Belmont Avenue in the direction of Bridgewater. He was fifty-eight years old. The night was not stormy, and it was quite cold. Mrs. Harlow sat beside him at his right. He brought his automobile to a stop three or four feet "back of the property line," near the curb line on Belmont Street. In this position he had a view of Belmont Street to his left for "only a little ways, a small ways," and a view of Belmont Street to his right, which "might have been twenty-five or thirty feet, as . . . [he] sat in the car with the car stationary." At the instant he stopped there were no other vehicles visible in the intersection of Belmont Avenue and Belmont Street. His automobile remained stopped for two or three minutes, and during that period his attention was attracted by the reflection of headlights of a trolley car approaching from the east (his left). He waited for that car to pass the head of that portion of Belmont Avenue which ran into Belmont Street, and when it had passed to his right he then travelled across Belmont Street at a speed of three to five miles an hour. When the front wheels of his automobile had come out so that they were in alignment with the northerly curb of Belmont Street he looked up Belmont Street to the west, that is to his right, and saw the rear end of the trolley car seventy-five or one hundred feet away. He did not see anything approaching from that direction, and when he reached the first rail he could see two hundred feet to his right. He looked to his right and to his left, and as he crossed Belmont Street he pulled a little to his right, planning to get to the right hand side of Manomet Street. He "got across the trolley lines, including the passage for automobiles and the like, and was practically in Manomet Street when the accident happened." When his wheels reached a point opposite the southerly curb line of Belmont Street his automobile was approximately in the center of Manomet Street; when he got to the second rail there was nothing to obstruct his view for three hundred or four hundred feet; when he reached the center rail he easily could have seen to his right a distance of two hundred or three hundred feet if he had looked. When his automobile reached a point somewhere

near the southerly curb of Belmont Street, he saw a "strong light [of the defendant's car] right, apparently, right down at . . . [his] door," and "that is the last he knew." The moment he saw the lights there was a collision; "he never even saw the car which he says hit him." He could see that the lights were bright and that was the last he knew; "there wasn't any lapse of time to see that." He was not looking to his right "after . . . [he] had crossed over the car rails." The "moment this electric car was going by he did not shoot right by the back of that electric car into the other . . . car." His wife gave him no warning up to the time the accident happened, and he has no memory of her saying a word to him prior to the accident about any vehicle to his right; "it was a trunk line coming up, and that is why . . . [he] used all the precautions." He was coming out of a side street to cross Belmont Street. The electric car did not block his vision; he did not "shoot behind it." He "could have stopped his car instantly," within a foot or two, when he reached the first rail.

There was evidence to warrant a finding that the defendant entered Belmont Street from the west at a rate of speed in excess of twenty miles an hour. This rate of speed on November 25, 1930, was *prima facie* evidence of a rate of speed greater than was reasonable and proper. G. L. c. 90, § 17. There was other evidence which supported the contention of the plaintiff that his automobile had crossed Belmont Street and was entering Manomet Street at the time of the collision, and that the plaintiff did not shoot out in front of the defendant just as the electric car was passing, as some witnesses for the defendant testified.

We do not understand from the defendant's brief that he contends that a verdict for the defendant should have been directed for lack of sufficient evidence of the defendant's negligence. We understand that his contentions are that the conduct of the plaintiff and his wife as a matter of law proved they were guilty of contributory negligence; that when the plaintiff's automobile started to cross the intersection of Belmont Street and Belmont Avenue, the defendant was approaching on the plaintiff's right; that when

the plaintiff had entered the intersection and had reached the second trolley car rail he could have seen up Belmont Street to his right three hundred to four hundred feet; that the defendant's automobile was then approaching the intersection and must have been in plain sight; that the plaintiff should have seen the defendant at that time and stopped his automobile if necessary to avoid a collision; that a failure to see the oncoming automobile of the defendant was carelessness; and that the plaintiff stands in the same position as he would if he had not looked at all. These contentions avoid consideration of the fact that the defendant could have seen if he had looked that the plaintiff was within the intersection while he, the defendant, was yet three or four hundred feet away from the intersection. This fact warranted a finding that had the plaintiff seen the defendant he could have assumed the defendant saw him, saw that he was within the intersection, knew that the plaintiff had the right of way, and would stop until the plaintiff passed through the intersection. G. L. (Ter. Ed.) c. 89, § 8.

On the evidence shown by the record it is plain the issue whether the plaintiff and his wife were in the exercise of due care was a question of fact for the jury. The verdicts of the jury for them import that their conduct was that of careful and prudent persons in the circumstances disclosed at the trial. *Button* v. *Crowley*, 284 Mass. 308, 313. The evidence on all issues was conflicting, and the jury were free on the evidence to find facts which were in accordance with their testimony and were against the contention of the defendant that they were not in the exercise of due care. In each case the motion for a directed verdict for the defendant was denied rightly.

*Exceptions overruled.*