JOSEPH AROMANDO *vs.* ALICE L. LEACH.

Worcester.    February 8, 1940. — June 24, 1940.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Negligence,* Motor vehicle, Contributory, In use of way.

Testimony by the plaintiff, in an action for personal injuries sustained in a collision of automobiles at an intersection of ways where the defendant was making a left turn, contradicted subsidiary findings by an auditor, whose findings were not to be final, and warranted conclusions, contrary to those of the auditor, that the plaintiff was in the exercise of due care and that the defendant was negligent.

TORT.    Writ in the Central District Court of Worcester dated November 7, 1935.

On removal to the Superior Court, the action was tried before *Donnelly*, J.

*Nunziato Fusaro & Nicholas Fusaro*, for the plaintiff, submitted a brief.

*W. W. Jump*, for the defendant.

DOLAN, J. This is an action of tort to recover compensation for personal injuries and for damage to the plaintiff's automobile, resulting from a collision of the automobile operated by the plaintiff with one operated by the defendant. The case was referred to an auditor whose findings were not to be final, and thereafter was tried to a jury before whom the auditor's report and other evidence were introduced. At the close of the plaintiff's case, upon motion of the defendant and subject to the plaintiff's exceptions, the judge directed the jury to return a verdict for the defendant on each count of the declaration.

Material facts found by the auditor are these: The accident occurred on March 15, 1935, between 6 and 6:30 P.M. at the intersection of Front and Harding streets, in Worcester. Front Street runs east and west and is about forty feet wide. There are two sets of trolley car rails in the center of the street. Harding Street does not cross but intersects Front Street from the south at substantially a right angle, and is about one hundred feet wide at the intersection. An overhead railroad bridge seventy-five feet wide crosses Front Street, the westerly edge of the bridge being approximately a continuation of the easterly line of Harding Street. About five feet south of the extended southerly line of Front Street and in about the middle of Harding Street, is a raised oval shaped island, about ten feet long and five feet wide. "There were three steel poles for street lights and trolley car wires and a granite historical marker located on this raised section." The locus is a thickly settled section.

Just before the accident happened the defendant was operating her automobile at a speed of twenty miles an hour on her right side of Front Street in the westerly direction, and was approaching the intersection with Harding Street. When about half way under the center of the bridge she left

her right side of the road and began to drive to the left of the center of Front Street preparatory to turning south into Harding Street. There were no automobiles ahead of the defendant's automobile travelling in the same direction. Just before reaching a point opposite the raised area in Harding Street, and while her vehicle was close to the northerly rail of the eastbound car track and proceeding at a speed of fifteen miles an hour, the defendant turned her automobile to the left to go south into Harding Street to the west of the raised area. She then saw two automobiles coming easterly on Front Street. They were quite a distance apart, the first or nearer moving faster than the second. The defendant "reduced her speed to ten miles per hour and shifted into second gear, having in the meantime completed the turn to the left of her automobile, and thus permitted the first of these two oncoming cars to pass in front of her on the southerly side of Front Street" which she had partly crossed. She then looked and saw the second automobile, that of the plaintiff, at the intersection of Front and Harding streets, about thirty feet distant from her. It was turning around the corner to go into Harding Street and travelling at a speed of about fifteen miles an hour. The defendant continued across Front Street, "still in second gear," and when "she was about opposite and westerly of the raised section, it being about one and one half feet from the left side of her automobile, the right front fender of the plaintiff's automobile which in the meantime had again turned to proceed down Front Street, collided with the right rear fender of the defendant's automobile. With the impact the plaintiff's automobile stopped, facing easterly and about ten feet west of the raised section. The defendant stopped her automobile after going ten to twelve feet." At the moment of collision each vehicle was travelling at a speed of ten to fifteen miles an hour. At the time of the accident an automobile was parked on the southerly side of Front Street a few feet westerly of the westerly line of Harding Street, and automobiles were parked diagonally along the westerly line of Harding Street. The auditor found that the defendant "was in the exercise of due care and not negligent" and that the

"plaintiff was not in the exercise of due care, but was negligent," and found for the defendant.

The general or ultimate finding of the auditor, as well as his subsidiary findings, constitute *prima facie* evidence (G. L. [Ter. Ed.] c. 221, § 56) which retains its artificial legal force and compelling effect until evidence appears from within the report itself or from without that warrants a finding to the contrary. The force and effect of *prima facie* evidence are fully discussed in *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564, 565–567.

The testimony of the plaintiff, however, would warrant the jury in finding the following facts: Just before the accident occurred the plaintiff was travelling on Front Street in the easterly direction. As he came to Harding Street the traffic light was "red against traffic proceeding on Front Street" and he came to a stop about five feet to the rear of another automobile. His vehicle was then about seven or eight feet from an automobile parked at the curb on his right hand side. The automobile ahead started up and the plaintiff proceeded slowly behind it. He then saw the defendant's automobile about fifty or sixty feet east of the bridge "and about ten feet beyond the curbing on Harding Street." It was travelling at a speed of thirty miles an hour. The plaintiff proceeded at a speed of four or five miles an hour behind the automobile ahead which was ten feet in front of him. He next saw the defendant's vehicle when it was "way over the other side of the car tracks" on his left. The defendant was then thirty-five or thirty-eight feet away from him and "was headed directly west." He didn't see her make a left turn and did not know how she "got over to where the accident happened," until she was about five feet away. He was looking straight ahead in an easterly direction on Front Street. He was watching the automobile ahead lest it slacken speed and he should run into it. He was driving in "first speed." When he saw the defendant's automobile five feet away from his, he "saw the danger" and reaching down pulled the emergency brake. The right front of the defendant's automobile struck the right center

front of that of the plaintiff, slid off from there, struck again and caught on the plaintiff's automobile and turned it, "dragged" it so that it was facing Harding Street. At the time of the collision the defendant's automobile was travelling at a speed of about thirty miles an hour. The defendant kept on going, and stopped at a point on Harding Street about one hundred to one hundred fifty feet more or less from the plaintiff's vehicle. No warning had been sounded by the defendant. After the accident happened the plaintiff got out of his automobile and, speaking to the defendant, said: "You know you couldn't get through there, those two cars." She replied: "I thought I could." The repairs to the plaintiff's automobile which were made necessary as a result of the collision were as follows: "straighten front axle, front wheel, front fender, replace front bumper bars, replace tie rod, replace steering knuckle and reline headlights." The jury could find that the damage thus indicated by the repairs was consistent with the description of the collision as testified to by the plaintiff; that the defendant's vehicle, when entering the intersection, was travelling at a speed of about thirty miles an hour in violation of G. L. (Ter. Ed.) c. 90, § 14, and did in fact collide with that of the plaintiff when the latter was proceeding easterly on Front Street, contrary to the finding of the auditor that the collision occurred when the plaintiff was turning to go from Harding Street to proceed again on Front Street, and that "confronted by a sudden emergency caused by the fault of the . . . [defendant, the plaintiff] did all that an ordinarily prudent driver would have done under the circumstances." *Jennings* v. *Bragdon,* 289 Mass. 595, 597. In the light of the facts that the jury could have found on the plaintiff's testimony, we think it could not rightly be ruled as matter of law that he was negligent and that his negligence contributed to the accident, but that the report of the auditor upon the introduction of the plaintiff's testimony lost its "artificial legal force and compelling effect" as *prima facie* evidence, and became merely evidence to be weighed by the jury with the other evidence introduced at the trial,

and that issues of the plaintiff's due care and the defendant's negligence were presented for determination by the jury. *Jennings* v. *Bragdon,* 289 Mass. 595, 597. *Harlow* v. *Corcoran,* 290 Mass. 289, 293. "When a collision occurs between automobiles at an intersection of ways the question whether there has been negligence on the part of either or of both of the operators is generally one of fact." *Bresnick* v. *Heath,* 292 Mass. 293, 297, and cases cited. *Barrows* v. *Checker Taxi Co.* 290 Mass. 231, 233. We think that the present case falls within that rule.

*Exceptions sustained.*