THELMA BRIGHTMAN *vs.* ERNEST BLANCHETTE.

VICTOR G. BRIGHTMAN *vs.* SAME.

Essex.    October 7, 1940. — December 31, 1940.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Negligence,* Motor vehicle, In use of way, Contributory. *Practice, Civil,*
   Exceptions: what questions open; Verdict with leave reserved. *Law*
   *of the Trial.*

The questions of negligence of the defendant, the operator of a motor
   truck which in the night time came into collision with a taxicab ap-
   proaching from its left at an intersection of two public ways, and of
   contributory negligence of the plaintiff, a passenger in the taxicab,
   were for the jury on the evidence.
Upon an exception to the entry of a verdict for the defendant under
   leave reserved after the recording of a verdict for the plaintiff, the
   question before this court is whether the evidence in its aspect most
   favorable to the plaintiff could rightly be found to support his cause
   of action, not whether the verdict entered was justified by a rule of
   law laid down by the trial judge in his charge to which no exception
   was taken.

TWO ACTIONS OF TORT.  Writs in the District Court of
Lawrence dated February 28, 1938.

On removal to the Superior Court, verdicts were recorded
with leave reserved before *Buttrick*, J., for the plaintiff in
the first case in the sum of $6,400, and for the plaintiff in
the second case in the sum of $100.  Thereafter the judge
ordered verdicts entered for the defendant.

*A. A. Thomson,* for the plaintiffs.

*D. H. Fulton,* for the defendant.

Cox, J.  The plaintiff in the first case, a minor, herein-
after referred to as the plaintiff, seeks to recover damages
for personal injuries sustained at about two o'clock in the
morning of October 31, 1937, when she was a passenger in
a taxicab which was in collision with a truck owned and
operated by the defendant, at the intersection of Chicker-
ing Road and Main Street, public ways in North Andover.
The plaintiff in the second case is her father and seeks to

recover for his consequential damages. The cases were heard by an auditor, and thereafter were tried before a jury upon the auditor's report and other evidence, at the close of which the trial judge denied the defendant's motions for directed verdicts, subject to his exception. The jury returned verdicts for the plaintiffs, and thereafter, under leave reserved (G. L. [Ter. Ed.] c. 231, § 120), verdicts were entered for the defendant, subject to the plaintiffs' exceptions.

It was agreed that Chickering Road is a State highway, and that there were "regular established stop signs" on Main Street on either side of Chickering Road "erected in accordance with the provision for such stop signs at through ways." (See G. L. [Ter. Ed.] c. 89, § 9.) Main Street, which runs approximately east and west and is practically level with a very slight upgrade, is twenty-seven feet wide, and Chickering Road, which runs approximately north and south, has a macadam surface forty-eight feet in width with a white center line at the intersection. The grade of this road on either side of Main Street is "downhill."

The jury could have found upon evidence most favorable to the plaintiff that she was seated in the right rear of the cab with her female companion at her left. The cab, which was travelling easterly on Main Street, did not stop before entering the intersection and was in collision with the truck at a point about four and one half feet east of the center line of Chickering Road and slightly south of the center of Main Street, approximately in a line with the southerly travelled section of that street.

It could have been found that the defendant, who was travelling in a northerly direction on Chickering Road, was negligent. He testified that he was very familiar with the locality; that when he first saw the cab on Main Street it was at his left and about one hundred and twenty feet "back from the corner"; that, at that time, he was about "forty-odd feet" from the corner of Main Street and travelling at a rate of speed of thirty miles an hour; that he was unable to judge the speed of the cab "because he just saw

the lights in the darkness of that road"; that there was nothing to obstruct his view to the left; that as he approached Main Street, he looked to the left, saw the cab and looked to his right, and never saw the cab again; that he saw the headlights to his left, "then he watched his right"; and that there was nothing to obstruct his view of the cab from the "point one hundred and twenty feet back up to the point of the collision." A plan of the locus appears to have been used at the trial, but it is not made a part of the record.

The plaintiff's companion saw the truck just a few moments before the collision, and the taxicab at that time was just entering Chickering Road. From the record it appears that she indicated on the plan the position of the cab when she saw the truck, although she testified that she could not place it exactly. But she did testify that the cab had entered Chickering Road when she first saw the truck and at that time the truck was "probably two or three car lengths away" and coming from the right. She also indicated this distance by reference to certain objects in the court room, but, upon the record, this is not helpful.

From the instructions to the jury which are printed in full in the record, it is apparent that there was a question of fact for the jury whether the cab passed into the intersection before the truck. See G. L. (Ter. Ed.) c. 89, § 8; *Gray* v. *Kinnear*, 290 Mass. 31; *Bresnick* v. *Heath*, 292 Mass. 293, 297. The front of the defendant's truck was damaged when it collided with about the center of the right side of the cab. No question was raised but that the operator of the taxicab was negligent. There was no other traffic on Chickering Road, and no evidence of other traffic on Main Street.

Where a collision occurs between automobiles at an intersection of ways, the question whether there has been negligence on the part of either or both of the operators is generally one of fact, *Aromando* v. *Leach*, 306 Mass. 286, 291, and cases cited, and ordinarily this is true of collisions at other places upon a highway. *Pease* v. *Lenssen*, 286 Mass. 207, 208, and cases cited. *Beebe* v. *Randall*, 304 Mass. 207, 209, 210, and cases cited. From the permis-

sible findings already narrated, we are of opinion that the case at bar comes within the general rule and that it was a question of fact for the jury to determine whether the defendant was negligent. *Payson* v. *Checker Taxi Co.* 262 Mass. 22. *Scott* v. *Lieberman,* 284 Mass. 325, 327.

It could not have been ruled as matter of law that the defendant had sustained the burden of proving that the plaintiff was contributorily negligent. The auditor, who found for the defendant, predicated this finding solely upon his subsidiary finding that "on all the evidence" presented to him he was "unable to find any facts upon which to predicate a finding of negligence on the part of the defendant." The jury could have found that the plaintiff did not see the defendant's truck until just before the collision when it was on her right. She was "quite" familiar with the locus, and, although it is possible to look from Main Street across the land to Chickering Road, she did not recall that she looked. She also testified that she would say that it was a fair statement that she did not look at all, and that her recollection was that the cab was travelling at a rate of speed between fifty and sixty miles an hour; that it did not slow down at the intersection; that she did not know whether it slowed down, but she could not recall that it did, and that, so far as she knew, she had no recollection that it changed its speed up to the time of the collision; that she did not see anything at all until just at the instant of the collision; that the sight of the truck and the crash were almost simultaneous; that before the impact she remembered that she did scream; that she was rendered unconscious and "waked up" in the hospital; and that she did not remember exactly where she was looking as she came along Main Street between the next street to the west and Chickering Road. But her companion testified as already narrated, and the operator of the cab, who testified that when he was at the next street to the west of Chickering Road he was travelling "around" sixty miles an hour, also testified that although he did not stop at the stop sign, he slowed down to approximately forty miles an hour "because he realized there was a stop sign there," and then

continued across; that he looked to his right when he was "a couple of hundred yards back from Chickering Road" and did not look again.

The plaintiff, as a passenger in the cab, could well trust something to the care of the operator and to the expectation that he would exercise that degree of care which he owed to her. But it was her duty to exercise reasonable care for her own safety. *Ingalls* v. *Lexington & Boston Street Railway,* 205 Mass. 73, 76. *Keyes* v. *Checker Taxi Co.* 275 Mass. 461, 468. See *Bessey* v. *Salemme,* 302 Mass. 188; *Friedman* v. *Berthiaume,* 303 Mass. 159, 164, 165. Apart from the possible question of speed, nothing is shown as to the manner in which the cab was being driven prior to its immediate approach to Chickering Road that called for any protest or comment by the plaintiff, if, indeed, the speed called for any. *Gallup* v. *Lazott,* 271 Mass. 406, 409. Although she testified that the cab did not slow down at the intersection, she also testified that she did not know whether it did, that she could not recall that it did, and that she had no recollection that it changed its speed up to the time of the collision. It is to be borne in mind that she was rendered unconscious, and, in any event, she is entitled to the benefit of the testimony of the operator of the cab that he did slow down and also to that of her companion. *Cohen* v. *Martin,* 298 Mass. 425, 427. *Beebe* v. *Randall,* 304 Mass. 207, 210, 211. It seems obvious upon this record that, if the cab had stopped at the stop sign, there would have been no collision. In view of the fact that the plaintiff was rendered unconscious, the jury may have concluded that at the time of the trial she had no memory as to the movement of the cab just prior to the collision. If, in fact, the speed of the cab was reduced as it approached the intersection, as testified to by the operator, this would be some indication that the reduction was being made for the purpose of observing the law and coming to a stop, and we cannot say that the plaintiff may not have rightly assumed that the operator of the cab was apparently cognizant of matters within his observation. *Monaghan* v. *Keith Oil Corp.* 281 Mass. 129, 132, 138. *Ouillette* v. *Sheerin,* 297

Mass. 536, 540.   See *Harlow* v. *Corcoran*, 290 Mass. 289, 292, 293.   It cannot be said that the only rational inference to be drawn from the permissible findings is that the plaintiff was contributorily negligent.

The defendant contends that the plaintiffs are bound by the rule of law laid down by the judge in his charge, to which no exceptions were taken.   But "The test to determine the correctness of the action of the trial judge in ordering the entry of a verdict for a defendant under leave reserved is whether the evidence in its aspect most favorable to the plaintiff could rightly be found to support the contentions essential to the maintenance of his cause of action."   *Holton* v. *Shepard*, 291 Mass. 513, 515, and cases cited.   See *Potter* v. *Dunphy*, 297 Mass. 345; *Braintree National Bank* v. *Payne*, 303 Mass. 184.   The cases are distinguishable from *Santa Maria* v. *Trotto*, 297 Mass. 442, 447.

> *Exceptions sustained.*
> *Judgment for the plaintiffs on the verdicts.*