### JANE D. MacGOWAN v. CHARLES M. MILLS.

*Robert W. Upton* and *John H. Sanders* (*Mr. Upton* orally), for the plaintiff.

*Murchie & Murchie* (*Mr. Alexander Murchie* orally), for the defendant.

MARBLE, C. J. The parties concede that their rights are governed by the law of Massachusetts and that the questions presented by the exceptions are (1) whether the evidence warrants the finding that the defendant was guilty of gross negligence causing the accident and (2) whether the evidence conclusively establishes the plaintiff's contributory fault.

At about 6:30 o'clock on the evening of February 20, 1941, the defendant left Concord for Boston accompanied by the plaintiff, who was his guest. After arriving in Boston he left his car in a parking place near the Statler Hotel and he and the plaintiff then went to the dining room of the Statler for cocktails. From the hotel they proceeded by taxicab to the Latin Quarter, a night club, where they had dinner and then danced and watched the floor show until after midnight. On their return to the parking area they took the car and started for Rindge, where the plaintiff expected to spend the night with a friend. From Rindge the defendant intended to go on to his home in Jaffrey.

Route 119, over which the defendant was driving, forms a junction with route 25 at Groton. This junction is located near a small park, 200 feet in length and from 15 to 30 feet in width. Route 119 runs in the general direction of north and south and passes this park on the east. Route 25 joins route 119 at both the north and south ends of the park. Commencing at the south and narrower end, it runs in a northwesterly direction along the westerly side of the park for a distance of 120 feet and then turns in a sharp curve abruptly to the west leading toward Rindge.

The defendant approached route 25 from the south and at a speed, it could be found, much in excess of the posted speed limit of 25 miles an hour. The evidence tended to prove that he did not attempt to follow the curve but drove straight ahead through a snow bank and across a triangular plot of land located between the two approaches to route 119, then across the 30-foot width of highway north of this plot, striking a tree at the side of the road and causing the injuries for which the plaintiff seeks recovery.

Although the defendant testified that the car skidded on the ice as he attempted to make the turn, the jurors were not obliged to believe him. A physician, summoned to the scene of the accident, found the car "headed up against the tree" and stated that the traveled portion of the road was free of ice. The chief of police, who made an investigation at 7 o'clock that morning, declared that there was no ice on the traveled way, that the wheel marks in the snow on the triangular plot led directly to the tree, and that there were no signs of skidding. A photographer who took photographs of the locality that same morning testified that while there were patches of ice in the trench at the side of the triangular plot, there was no ice "on the road itself."

The plaintiff testified that as they reached Groton the speed of the car was "around forty-five miles an hour" and that she noticed no change in the speed or in the course of the car until the crash. The front of the car was completely demolished. The defendant made conflicting statements concerning his speed, varying from 20 to 35 miles an hour. In answer to the question, "Under conditions existing that night forty-five miles an hour would be a dangerous speed on that curve, wouldn't it?" he admitted, "It would be probably."

The jury could properly find on all the evidence that the defendant was driving at a high rate of speed and that he was exceedingly heedless of the situation, although he knew of the existence of the curve and understood the danger involved in approaching it at the

speed at which it could be found he was driving. These facts would fully justify a finding of gross negligence as that term is defined by the Massachusetts decisions. *Meeney* v. *Doyle*, 276 Mass. 218, 220; *Caldbeck* v. *Flint*, 281 Mass. 360, 362; *Picarello* v. *Rodakis*, 299 Mass. 33, 36; *Granger* v. *Lovely*, 302 Mass. 504, 507. See, also, *Richards* v. *Richards*, 86 N. H. 273, 274.

The plaintiff testified that when they had reached a point about half or three-quarters of a mile from the scene of the accident, she closed her eyes "for a moment to rest them" because the "glare of the lights had been bothering" her, and that the next thing she knew "there was a crash." She declared that she was sure she was not asleep. She had been mindful of the manner in which the defendant had been driving. On cross-examination she stated that everything that the defendant did about driving the car "seemed to be perfectly all right" to her "up until the accident happened," and that nothing occurred on the way to make her "wonder if Mr. Mills were driving his car properly." It is true that she answered affirmatively the question, "You placed absolute reliance on the driver's caution, I suppose, when you leaned back and closed your eyes?" But when asked if she "surrendered all care" of herself to him at that time, she answered no.

The answer to the first of these questions did not entitle the defendant to a directed verdict. The plaintiff "could well trust something to the care of the operator and to the expectation that he would exercise that degree of care which he owed to her." *Brightman* v. *Blanchette*, 307 Mass. 584, 588. Furthermore, the Massachusetts court in the case of *Bessey* v. *Salemme*, 302 Mass. 188, 210 (1939), has expressly repudiated "the so-called doctrine of voluntary, noncontractual surrender of all care." See 52 Harv. Law Rev. 1184, 1185; 19 B. U. Law Rev. 326. The question of the plaintiff's contributory fault was for the jury.

*Judgment on the verdict.*

All concurred.