15795

SQUIRES v. HENDERSON

(36 S. E. (2d), 738)

*Messrs. M. M. Weinberg,* of Sumter, and *J. D. O'Bryan,* of Kingstree, Counsel for Appellant,

*Mr. J. Frank Eatmon,* of Kingstree, Counsel for Respondent,

January 21, 1946.

MR. ASSOCIATE JUSTICE OXNER delivered the Opinion of the Court.

Alton Squires died as a result of injuries received about 4 a. m. on August 4, 1944, while riding as a paying passenger in a taxicab owned by appellant and operated by one of his employees. This action was brought under the provisions of Sections 411 and 412 of the Code of 1942, familiarly known as Lord Campbell's Act, by the administratrix of his estate, for the benefit of his widow and four children, to

recover damages for alleged wrongful death. The trial resulted in a verdict and judgment in favor of respondent for $11,250.00 actual damages.

We shall first consider the contention of appellant that the evidence fails to show any actionable negligence on the part of the driver of the taxicab (Exception 3). This necessitates a brief review of the testimony. Some time during the early morning of the day of the fatal accident respondent's intestate engaged one of appellant's taxicabs to transport him from Sumter to Gourdin, South Carolina, a distance not disclosed by the record. After proceeding approximately 40 miles and reaching a point on State Highway No. 261 about 2½ miles southeast of Greeleyville, the taxicab left the highway, overturned, and respondent's intestate was thrown from the cab resulting in his death almost instantly. The driver received only slight injuries. There were no other eyewitnesses to the accident. In behalf of appellant, the driver testified that the taxicab, including the brakes, was in good mechanical condition; that as he reached a curve in the road, while traveling between 35 and 40 miles per hour, the right front tire suddenly went flat, causing the car to swerve to the right shoulder of the road; that he then tried to steer it to the left so as to get back on the pavement and lost control of the car; and that the car crossed the pavement to the left shoulder of the road, proceeded some distance and turned over twice. Appellant does not contend that this tire blew out. A highway patrolman, who inspected the car several days after the accident, testified that this tire "was practically slick"; that the wheel did not show "any dents around the rim"; and that he found no break in the casing. A farmer who lived about 400 yards from the scene of the accident testified that while at his tobacco barn he observed the taxicab passing; that it was traveling "pretty fast"; and that while he did not see the accident, he heard "the screaming of the tires and the tumbling of the car". There were several witnesses who saw and talked to the driver within thirty minutes after the accident. They testified that while he was not drunk, they smelled alcohol. The driver denied that he was drinking, claiming

that he only drank a bottle of beer on the morning of the previous day.

It is undisputed that the imprint of the tires was plainly visible for some time after the accident and the course of the car could be easily followed, but there is a sharp conflict in the evidence as to the nature or appearance of these tire marks. Several witnesses for respondent testified that the tread across the pavement was smooth and the marks resembled those made by an inflated tire, while several witnesses for appellant testified that at certain places there were "rim marks" which resembled those made by a flat tire. A highway patrolman, who visited the scene during the afternoon of the day of the accident for the purpose of making an investigation, testified that he found tracks where a car left the pavement and entered the right shoulder of the highway at a point where there is a slight left curve in the road; that these car tracks extended along the grass of the right shoulder for a distance of 219 feet where they again entered the pavement; that from this point there were skid marks which were plainly visible extending a distance of 231 feet diagonally across the pavement; that the tracks then led from the pavement across the left shoulder to a broken place in a fence, a distance of 57 feet; and that they then extended across a pea field an additional 69 feet to a point where the car overturned. There is abundant testimony tending to show that these tracks and tire marks were made by the taxicab. According to the testimony of this patrolman, the taxicab traveled a total distance of 576 feet from the place where it first left the pavement to the point where it stopped.

Much of the testimony relied on by respondent to show actionable negligence on the part of appellant's driver is of a circumstantial nature. In *Leek v. New South Express Lines*, 192 S. C., 527, 7 S. E. (2d), 459, 462, the Court said: "It is incumbent upon the plaintiff, in the absence of direct evidence, to show the existence of such circumstances as would justify the inference that the injury which caused the death was due to the wrongful act of the defendant, and not leave the question to mere spec-

ulation or conjecture. The facts and circumstances shown should be reckoned with in the light of ordinary experience and such conclusions deduced therefrom as common sense dictates." We must also bear in mind that appellant was a common carrier for hire and owed to respondent's intestate, a paying passenger, the highest degree of care. *Poliakoff v. Shelton*, 193 S. C., 398, 8 S. E. (2d), 494.

We think there was sufficient evidence to warrant the jury in rejecting the explanation of the accident as given by the driver and to justify the inference that his negligence was the proximate cause of the death of respondent's intestate.

We shall now consider certain exceptions imputing error in the admission of testimony. Exception 4 is to the effect that the Court erred "in permitting the witness Long to give opinion evidence as to the cause of certain marks on the road." This exception does not set forth or otherwise identify the particular testimony complained of. However, we shall waive this objection and consider it. From the brief of appellant's counsel we gather that the testimony complained of was that of a highway patrolman to the effect that the tire marks on the pavement "appeared to be those of inflated tires." This witness had previously testified without objection that "there was a smooth tread", and that he did not find anything in the road "to indicate all of the tires were not standing up at the time", and had previously been cross examined by appellant's counsel as to whether there were "any steel marks" on the road. Several witnesses for appellant thereafter testified, in response to questions by appellant's counsel, that the marks on the pavement were apparently made by "the rim of a flat tire". It should be further pointed out that the first reference to the appearance of these marks on the pavement occurred near the beginning of the trial during the following cross examination of one of respondent's witnesses:

"Q. You saw fresh marks one place? A. Yes, where he (the driver) was telling me about how the wreck happened.

"Q. You saw a place where the tire had made a mark where the brakes were applied? A. Well, it was a mark.

"Q. Was it a rubber mark or a steel mark? A. Well, it was dark, I couldn't say."

■ It appears from the foregoing that appellant's counsel first went into this line of testimony; that similar testimony by the witness Long was given without objection; and that later in the trial testimony along the same line was brought out by appellant from his own witnesses. Under these circumstances, appellant is in no position to complain. *Nock v. Fidelity & Deposit Co. of Baltimore,* 175 S. C., 188, 178 S. E., 839, 98 A. L. R., 757; *Kneece et al. v. Southern Railway et al.,* 187 S. C., 195, 197 S. E., 673. It is not necessary that we determine whether, apart from the foregoing circumstances, said testimony would have been admissible. For those who desire to pursue the subject further, however, an interesting annotation will be found in L. R. A., 1918-A, page 732, to which might be added the following more recent cases: *Monaghan v. Keith Oil Corporation,* 281 Mass., 129, 183 N. E., 252; *Mace v. Watanabe et al.,* 31 Cal. App. (2d), 321, 87 P. (2d), 893.

■ We shall next consider Exception 2. A magistrate and his constable arrived at the scene about thirty minutes after the accident. Both testified that they smelled alcohol on the driver and that the magistrate asked him whether he had been drinking, to which he replied that he had consumed no alcohol since drinking a bottle of beer the previous morning. It is contended that this statement of the driver was not a part of the *res gestae* and was incompetent. The record discloses that the same testimony was given by the driver on direct examination by appellant's counsel. The error, if any, in the admission of this statement was harmless.

■ Exception 1 relates to the redirect examination of this magistrate by respondent's counsel. Appellant's counsel asked the magistrate on cross examination whether he held the driver on the charge of driving under

the influence of intoxicants. The witness replied that he did not, but requested the driver to remain at the scene until the coroner arrived. Appellant's counsel then asked the witness whether the coroner later that morning released the driver on the ground that the accident was an unavoidable one, to which the witness replied that he "heard they did." On re-direct examination the following appears:

"By Mr. Eatmon: Q. Now, he asked you if you held him, this man. Do you now hold him—

"Mr. Weinberg: Just a minute—

"By Mr. Eatmon: Q. Under a charge of reckless driving of that automobile, of reckless homicide.

"Mr. Weinberg: We object to that."

The Court sustained the objection, stating that the matter referred to, as well as the action of the coroner which was brought out by appellant, was irrelevant, and clearly instructed the jury to disregard the question. Appellant's counsel moved for a mistrial on the ground that the question was highly prejudicial and known to be so by respondent's counsel. It is contended that the Court erred in overruling the motion for a mistrial. We see no merit in this contention. We think it is clear that this is not a case where an improper question was asked in bad faith or for the purpose of getting before the jury that which counsel knew was incompetent. On the contrary, we think counsel was undertaking in good faith to reply to a phase of the case first brought out by appellant's counsel, although all of it, as held by the trial Judge, was irrelevant. We think the trial Judge wisely exercised his discretion in refusing to order a mistrial.

Exception 5 relates to the alleged exclusion of evidence. A witness for appellant testified that the taxi-cab was traveling at a fast rate of speed and that shortly after the accident he smelled alcohol on the driver. On the ground that they were taken by surprise, appellant's counsel were permitted to examine him as a hostile witness and contradict him. He was asked whether he had not previously signed a statement to the effect that he did not smell whiskey on the driver and was unable to judge the speed

of the taxicab. The witness admitted signing the statement but denied any knowledge of its contents, stating that he was unable to read and that the statement was not read to him. Appellant's counsel then offered the statement in evidence. The Court made the following ruling: "Well, it would not be admissible as evidence and could not be argued to the jury as proof of any fact alleged in that statement, but you could only use it as proof of a contradiction." After this ruling was made, appellant's counsel made no further reference to the statement and did not offer it in evidence for the purpose of contradicting the witness.

Appellant's counsel construe the remarks of the Court as refusing to admit the statement for any purpose. We do not agree with this construction. It is apparent from the foregoing language that the Court meant the statement could not be considered as original or substantive evidence of the facts embraced therein, but could be considered as affecting the credibility of the witness. This ruling was correct. *Sumter et al. v. American Surety Co. et al.,* 174 S. C., 532, 178 S. E., 145; *State v. Nelson,* 192 S. C., 422, 7 S. E. (2d), 72; *King v. Wesner,* 198 S. C., 49, 16 S. E. (2d), 289. Counsel did not see fit to offer the statement for the purpose of impeaching the witness after the Court stated that it was admissible for that purpose. We may add that it is doubtful whether the introduction of the statement in evidence would have been of any benefit to appellant. The witness did not deny signing the statement, his contention being that he did so without knowing that it contained the contradictory matter referred to. This exception is overruled.

The sixth exception arises out of a peculiar incident which occurred after the jury retired and commenced deliberating. The jury was permitted to return to the court room and the following occurred: "Foreman: I would like to have a little information upon one point that has been discussed. It is question of the car being insured. The Court: Well, you have nothing to do with that, and

that cannot enter into the case at all, or into your consideration."

The jury then retired and after further deliberation returned a verdict. The exception under consideration is as follows: "The trial Judge erred in not specifically instructing the jury in response to its foreman's question, that no insurance had been discussed in the proceedings and that there was no evidence of insurance in the case in that said answer of the trial Judge was calculated to leave with the jury that said question of insurance had been brought out in the trial."

When the above incident occurred there was no motion for a mistrial. Counsel made no request that the Court amplify the remarks or instructions given in response to the foreman's inquiry. The question of insurance was never mentioned in any way during the trial. Some of the jurors may have got the impression of insurance from knowledge of the fact that the State and some municipalities require certain common carriers to have liability insurance. It is reasonable to assume that the jury followed the testimony and knew that the record was silent as to the existence of insurance. It was hardly necessary to remind the jury of the fact that it was not discussed during the trial. However, if counsel felt that the instruction given should have been enlarged by including the specific instruction referred to in this exception, they should have so informed the Court. Having remained silent, the Court was warranted in assuming that all parties were satisfied with its disposition of this unusual situation. This exception is overruled.

Judgment affirmed.

Mr. Chief Justice Baker and Messrs. Associate Justices Stukes and Taylor concur.

Mr. Associate Justice Fishburne did not participate.