James M. PROCTOR, Appellant,

v.

COLONIAL REFRIGERATED TRANS-
PORTATION, INC., Appellee.

No. 72-1211.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 6, 1973.

Decided March 27, 1974.

Henry Hammer, Columbia, S. C. (James W. Cothran, William P. Baskin, Bishopville, Lawerence M. Gressett, Jr., St. Matthews, S. C., on brief), for appellant.

Ronald E. Boston, Columbia, S. C. (H. F. Padget, Jr., and Turner, Padget, Graham & Laney, Columbia, S. C., on brief), for appellee.

Before CRAVEN, RUSSELL and FIELD, Circuit Judges.

FIELD, Circuit Judge:

James M. Proctor sustained serious injuries in an accident while riding as a passenger in a tractor-trailer being driven by one, E. O. Bales, under a lease arrangement with the defendant, Colonial Refrigerated Transportation, Inc. (Colonial). Proctor instituted this diversity action to recover damages from Colonial. Pursuant to a jury verdict, judgment was entered in the district court in favor of the defendant and the plaintiff has appealed.

Colonial is a certified interstate motor carrier, and about a year before the accident in question had entered into a written agreement with Bales under which he agreed to furnish a tractor and driver to transport commodities in trailers owned by Colonial. Colonial had also entered into an identical agreement with the plaintiff Proctor. Several days prior to the accident Proctor's tractor became disabled and was placed in a Maryland garage for repairs. Thereafter, Proctor was hired by Bales as an assistant driver in transporting a trailer of Colonial to Florida. While driving through South Carolina the tractor was involved in a collision with another truck killing Bales and seriously injuring Proctor.

Proctor's complaint alleged negligence on the part of Bales as an agent of Colonial, and also charged that Colonial permitted the tractor-trailer rig to be operated when it knew or should have known that the trailer had a defective coupler assembly.

■ The primary issue upon this appeal is whether a motor carrier operating under a certificate from the Interstate Commerce Commission is liable to an employee of a lessor for injuries resulting from the negligence of the lessor in the operation of his equipment in the business of the lessee-carrier. Incident to this issue the plaintiff challenges that part of the district court's charge which told the jury that if they determined the relationship between Bales and Colonial was that of independent contractor-employer at the time of the accident, they should return a verdict for the defendant.[1]

In support of his position, plaintiff relies heavily on the South Carolina case of Reed v. Southern Ry.-Carolina Divi-

---

1. The court's charge on this point was as follows:

I charge you that if you determine that the relationship between Mr. Bales, the driver of the defendant vehicle, and the defendant, was that of independent contractor-employer at the time of the accident in question, you must return a verdict for the defendant, because under the law this defendant is not responsible for negligent, or reckless, or willful or wanton acts committed by persons it has engaged or employed to perform independent services.

However, should you determine that the relationship between Bales and the defendant was that of master-servant, or principle or agent, or employer-employee, plaintiff would be entitled to recover, if plaintiff has proved by a preponderance of the evidence that the deceased, Bales, operated the defendant's vehicle in a negligent, or reckless manner which proximately contributed to and caused the wreck in issue.

sion, 75 S.C. 162, 55 S.E. 218 (1906). In that case the plaintiff's intestate had been injured by the negligence of the Southern Railway Company which had leased the railway lines and equipment from the defendant Southern Ry.-Carolina Division. The operating lessee Southern Railway Company, by whom plaintiff's intestate was employed, was originally made a party defendant to the action. When the case was removed to the federal court the plaintiff dismissed the action against Southern Railway Company, had the case remanded to the state court, and proceeded solely against the lessor Southern Ry.-Carolina Division. In recognizing that the plaintiff had a cause of action against the lessor-carrier the court stated:

"When a railroad company accepts a charter, it assumes the performance of all the duties to the public which are imposed upon it by the charter or the general laws of the state, and it cannot be permitted to escape from the obligations thus imposed upon it by transferring its chartered rights and privileges either to an individual or to another corporation. A corporation must of necessity always act through individuals, and whether such individuals are called its officers, or agents, or its lessee, cannot affect the question of its liability to perform the obligations which it has incurred, in consideration of its chartered rights and privileges. It cannot be permitted to enjoy the benefits conferred by its charter, without incurring the responsibilities incident thereto." 55 S.E., *supra*, at 221.

Upon consideration of Proctor's motion for a new trial the district judge concluded that the *Reed* decision was inapplicable to the present case since it was based to some degree upon the provisions of a legislative act as well as a section of the Constitution of the State of South Carolina. The legislation, which was designed to permit the consolidation of railroad companies and authorized leases of railroad lines within the state, provided that the lessor railroad should be and remain subject to suit for all causes of action arising out of the operation of the lines notwithstanding any lease thereof. The constitutional section extended to every employee of a railroad company the same rights and remedies for any injury sustained by him as were allowed by law to other persons who were not employees of the railroad. While we agree with the district court that the advertence to the legislative and constitutional provisions in *Reed* dilute its authority somewhat, nevertheless, we are of the opinion that the plaintiff's contention is supported by the underlying rationale of the case which was stated by the court as follows:

"A railroad company has the power to enter into a great many special agreements, but it cannot make a valid contract whereby it will be exempt from liability for negligence. * * * This principle is applied, even when the action is by an employé based on negligence. * * * The reason for the rule is that such contracts are against public policy." (citations omitted)

55 S.E. *supra* at 221.

However, aside from Reed, we think there is a more compelling reason which supports Proctor's position. As a certified interstate carrier Colonial was subject to the supervision and control of the Interstate Commerce Commission, and in augmenting its equipment through the lease agreement with Bales it was required to be in compliance with the Commission's Regulations, 49 C.F.R. §§ 1057.1–1057.6. These regulations and the statute under which they were promulgated require and provide that under such lease arrangements the lessee-carriers "will have full direction and control of such [leased] vehicles and will be fully responsible for the operation thereof * * * as if they were the owners of such vehicles * * *."[2] These regulations were promulgated by the Com-

---

2. 49 U.S.C. § 304(e)(2); 49 C.F.R. § 1057.4(a)(4).

mission to correct widespread abuses incident to the use of leased equipment by the carriers, *see* American Trucking Assns. v. United States, 344 U.S. 298, 303, 73 S.Ct. 307, 97 L.Ed. 337 (1953), and "the intent [of the regulations] was to make sure that licensed carriers would be responsible in fact, as well as in law, for the maintenance of leased equipment and the supervision of borrowed drivers.", Alford v. Major, 470 F. 2d 132, 135 (7 Cir. 1972).[3] The statute and regulatory pattern clearly eliminates the independent contractor concept from such lease arrangements and casts upon Colonial full responsibility for the negligence of Bales as driver of the leased equipment. Any language to the contrary in the lease agreement would be violative of the spirit and letter of the federal regulations and therefore unenforceable.

In its brief Colonial concedes its responsibility to the shipping or traveling public, but contends that this responsibility does not extend to Proctor in his posture as an employee of the lessor Bales. In support of this contention Colonial relies upon our decision in War Emergency Co-op Association v. Widenhouse, 169 F.2d 403 (4 Cir. 1948). In that case Widenhouse, owner-lessor of the truck, sustained damages as a result of the negligent conduct of the driver who was his employee. In declining to countenance a claim by Widenhouse against the lessee-carrier, this court found that the regulations of the Commission furnished no basis "for allowing Widenhouse to recover from defendant for damages caused by the negligence of his [Widenhouse's] own employee.", P. 407. However, the anomaly of Widenhouse is not present in the case before

us. The equipment, of course, was not owned by Proctor, and in his position as an employee of Bales there was no contractual relationship between Proctor and Colonial.[4] In the context of Colonial's responsibility under the Commission's Regulations, Proctor was as much a stranger to Colonial as a shipper or a member of the traveling public, and to deny him recovery upon the independent contractor theory would undercut the primary purpose of the regulatory design. The submission of the case to the jury upon this theory was error and requires that the judgment of the district court be set aside and a new trial awarded to the plaintiff. Upon the retrial the district court should direct the jury that under the regulations Colonial was responsible for Bales' conduct in operating the equipment, and negligence on his part would require a finding of liability with respect to Colonial.

Two other issues raised on this appeal require our attention. Paul Chesley Proctor, a brother of the plaintiff, was tendered as an expert upon the issue of the alleged defective coupler assembly. To demonstrate his qualifications as an expert this witness testified that he had been the owner and operator of a truck stop for a number of years and in such capacity serviced tractors and trailers, greasing and gassing them and doing minor repair work, and that thereafter he had served as a licensed inspector in the State of Kentucky for a period of four years. However, the nature of such inspections was not entirely clear. The record indicates that the district court had serious reservations with respect to the expertise of Proctor, but nevertheless permitted his testimony to be presented to the jury. Proctor theorized

---

3. The agreement between Colonial and Bales recognized Colonial's responsibilities under the regulations:
    "3. The CARRIER shall have such exclusive possession, control and use of the CONTRACTOR'S equipment and shall assume responsibility in respect thereto to the extent required by the rules and regulations of the Interstate Commerce Commission."

4. Colonial argues that since Proctor had a contract with it identical to that of Bales, Proctor was aware of the relationship between the parties and such knowledge on his part precludes him from asserting liability against Colonial. We find this contention of no merit since Proctor's contract was operative only when he was furnishing and/or driving his own equipment for Colonial pursuant to his lease agreement.

that the coupler assembly was not properly secured to the trailer and it was this defect which permitted the trailer to crush the cab in the collision. Upon this issue the defendant called as witnesses its maintenance director and a former mechanic as well as two representatives of Fruehauf, the manufacturer of the trailer. The testimony of these witnesses contradicted Proctor's testimony relative to the construction of the trailer and the coupler assembly, and tended to show that even if the coupler assembly had been defective in the manner detailed by Proctor, such a condition would not have been apparent to Colonial through an inspection of the trailer. In addition to these witnesses, J. A. Johnson, a research engineer in the area of transportation, testified as an expert on behalf of the defendant. Basing his opinion upon the evidence relative to the collision and the assumption that the trailer coupling was not defective, Johnson stated that the minimum load forces created by the impact could only have been dissipated by crushing the cab back into the trailer.

■■ At the close of all of the evidence the district court directed a verdict in favor of Colonial upon this issue. The ruling was based upon the latent nature of any defect in the coupler assembly as well as the lack of its causative role in regard to Proctor's injuries. We find ample support in the record for the court's action. First of all, we share the district court's reservations about Proctor's experience and the area of his expertise, and in the exercise of his discretion the district judge might well have declined to recognize the witness as qualified to state an opinion upon the issue. Bryant v. Sears, Roebuck & Company, 435 F.2d 953 (4 Cir. 1970), Krizak v. W. C. Brooks & Sons, Incorporated, 320 F.2d 37 (4 Cir. 1963). In any event, the clear and convincing evidence presented by Colonial and the tenuous nature of Proctor's testimony warranted a directed verdict in favor of the defendant upon this issue. "The test on direct-

ing a verdict . * * * is not whether there is any evidence, but whether 'there are no controverted issues of fact upon which reasonable men could differ.'" Pogue v. Retail Credit Company, 453 F.2d 336, 338 (4 Cir. 1972), cert. denied 409 U.S. 1109, 93 S.Ct. 910, 34 L. Ed.2d 689 (1973). In ruling upon the motion, the district judge observed that he did not consider the plaintiff's testimony creditable enough "for me to let a verdict stand on it." Under this well recognized criterion his action was appropriate. Wachovia Bank and Trust Company v. United States, 288 F.2d 750, 757 (4 Cir. 1961).

■■ Finally, Proctor challenges the action of the district court in permitting Colonial's counsel to question him upon cross-examination in regard to a statement signed by him. Proctor identified his signature but testified that he could not remember giving the statement and denied certain portions of it. Proctor contends that under these circumstances Colonial's use of the statement was improper unless the party taking the statement was first called as a witness in regard thereto. The statement was not introduced as a substantive admission by Proctor but was merely used a prior inconsistent statement for purposes of impeachment. With the authenticity of the signature admitted, the statement was proper impeachment material. *See* Squires v. Henderson, 208 S.C. 58, 36 S.E.2d 738 (1946). The question is of little moment, however, since substantially the same statements were made by Proctor in his pretrial deposition which was also used during the course of his cross-examination. Proctor was a party-litigant and his deposition was, of course, admissible either as substantive evidence or for impeachment purposes. *See* Community Counselling Service, Inc. v. Reilly, 317 F.2d 239, 243 (4 Cir. 1963).

The judgment of the district court is reversed and the case remanded for a new trial consistent herewith.

Reversed and remanded.