FLEET TRANSPORT COMPANY, INC., Appellee,

v.

Carroll C. MULLIS and Phillip Wayne Cline, Appellants.

No. 83–1209.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 8, 1983.

Decided Feb. 9, 1984.

---

William C. Morris, Jr., Asheville, N.C. (Morris, Golding & Phillips, Asheville, N.C., on brief), for appellants.

Russell P. Brannon, Asheville, N.C. (Van Winkle, Buck, Wall, Starnes & Davis, P.A., Asheville, N.C., on brief), for appellee.

Before HALL, MURNAGHAN and CHAPMAN, Circuit Judges.

K.K. HALL, Circuit Judge.

In this diversity action, Phillip Wayne Cline and Carroll C. Mullis appeal from orders denying their motions for a directed verdict and from a judgment entered on a jury verdict indemnifying Fleet Transport Company, Inc. (Fleet) for $15,560.00. Finding no error, we affirm.

### I.

In September, 1977, Cline and Fleet entered into a written lease agreement in which Cline agreed to lease to Fleet tractors for hauling freight trailers. The agreement stated that Cline would provide and compensate "qualified employees" as drivers and would pay for all "taxes, charges, benefits, claims and liabilities of every kind" which might arise from their employment. Additionally, the agreement provided that "neither the CONTRACTOR [Cline] nor any of its employees shall be deemed to be agents, servants, or employees of the CARRIER [Fleet] for any purpose whatsoever...."

This written lease agreement was subsequently modified by an oral agreement in which Fleet agreed to pay Cline an additional five percent of Fleet's gross revenue from each tractor leased, in exchange for Cline's promise to provide liability insurance covering the tractor, the trailer, and the driver during the period of the lease.[1] Following this oral modification, Fleet paid Cline the additional five percent for each tractor leased, and relied upon Cline to provide all liability insurance coverage on his tractors and Fleet's trailers.

---

1. Fleet states in its complaint that under the oral agreement Fleet was also to be made an additional insured on Cline's liability insurance policy. There is no evidence in the record, however, supporting this allegation.

On February 28, 1978, Mullis, the driver of a tractor owned by Cline and leased to Fleet, drove the tractor into the overhead canopy of a service station operated by James B. Landers and owned by Exxon Company, U.S.A., in Canton, North Carolina. After the accident, Mullis apologized to Landers and stated that he had not noticed the canopy's clearance level. Repairs to the canopy and damaged equipment totaled $13,821.01.

In March, 1978, Exxon demanded payment from Fleet for all property damages. Fleet immediately notified Cline and Virginia Mutual Insurance Company (Virginia Mutual), Cline's insurance carrier, of Exxon's claim and requested that either Cline or his carrier accept responsibility for the claim. Cline refused to recognize Exxon's claim and Virginia Mutual notified Fleet that it did not provide liability insurance coverage to Cline when his tractors were towing Fleet's trailers. Exxon subsequently threatened to sue Fleet. In October, 1978, Fleet paid to Exxon $13,821.01 in satisfaction of Exxon's claim.

The collision also resulted in damages to Landers, the station owner, due to the loss of profits caused by the interruption of his business, and on February 14, 1979, Landers brought suit in state court against Mullis, Cline, and Fleet. Fleet mailed a copy of Landers' complaint to Virginia Mutual, requesting that it assume the defense of the action on Fleet's behalf. Virginia Mutual retained counsel for Cline and Mullis but did not do so for Fleet. Landers subsequently settled his claim for $7,000.00, half of which was paid by Fleet. A consent judgment was entered dismissing Landers' action without prejudice to any claims Fleet might have against Mullis and Cline.

Fleet brought this diversity action below for indemnity from Cline and Mullis for all sums which Fleet had paid to Exxon and Landers on the ground that Mullis, as an employee of Cline, was negligent in causing the damage to the service station or on the alternative theory that Cline breached his oral agreement to provide full liability coverage and to name Fleet as an additional

insured. At trial, Cline and Mullis moved for a directed verdict at the end of Fleet's case-in-chief. This motion was denied. Cline and Mullis then rested without putting on evidence and renewed their motion. This motion was also denied. The jury found in favor of Fleet on both counts, and awarded it $15,560.00. The district court entered a judgment on the verdict. Cline and Mullis appeal.

## II.

Appellants' central contention on appeal is that the trial judge erred by denying their motions for a directed verdict with respect to (1) Mullis's employment by Cline, (2) Mullis's negligence, and (3) the oral agreement. We disagree.

■ Mullis was clearly Cline's employee under the terms of the lease agreement. The agreement specifically stated that Cline would, at his own expense, furnish Fleet with "qualified employees," and pay for related "claims and liabilities of every kind." The agreement emphasized that such employees were never to be deemed "agents, servants or employees of the CARRIER [Fleet] *for any purpose whatsoever.*" (Emphasis added.) As the agreement stipulated, Mullis was furnished by Cline to Fleet to operate the equipment leased from Cline. Mullis was paid solely by Cline. Under these facts, the district court did not err by denying appellants' motions for a directed verdict.

■ Nor did the district court err by denying appellants' motions for a directed verdict on the issue of Mullis's negligence. The evidence indicates that after Mullis drove his truck into the service station canopy he apologized to the operator of the service station and admitted that he had not noticed the canopy's clearance level. Fleet presented evidence that one by three foot signs were posted on either end of the canopy stating its clearance level. Moreover, Fleet offered photographs into evidence showing the site of the tractor-trailer rig which Mullis was operating and the placement of the clearance signs on the

canopy. If this was not overwhelming evidence of Mullis's negligence, it was certainly sufficient evidence to justify denying appellants' motions for a directed verdict and to send the issue to the jury.[2]

 Lastly, Cline argues that the trial judge erred by denying his motions for a directed verdict against Fleet's allegation that Cline had breached the oral agreement by failing to provide full liability coverage while his trucks were leased to Fleet and by failing to name Fleet as an additional insured. We find this position untenable.

Cline does not deny that pursuant to the oral agreement Fleet agreed to pay Cline an additional five percent of the gross revenue from each tractor leased in exchange for Cline's promise to provide full liability insurance while his trucks were leased to Fleet. Nor does Cline deny that subsequent to the oral agreement Fleet paid Cline the additional five percent. Nonetheless, Cline requested a directed verdict without offering a reasonable explanation for how he used this additional money.

Conversely, although there is no evidence in the record that Fleet was to be named as an additional insured on Cline's liability insurance policy, there is considerable evidence that Cline failed to provide full liability coverage while his trucks were leased to Fleet. At trial, Fleet's vice-president testified that Fleet received from Cline a certificate of coverage from Virginia Mutual. Yet, when notice of the accident was received from Exxon and referred to Virginia Mutual, the insurance company denied such coverage and refused to accept responsibility for Exxon's claim. Similarly, when suit was filed by the service station owner, Virginia Mutual refused to assume Fleet's defense. Moreover, Cline admitted that he never requested that Virginia Mutual assume the defense for all defendants in that action. This evidence is clearly sufficient to require the case to be submitted to the

jury on the issue of Cline's breach of the oral agreement. Thus, the district court properly denied Cline's motions for a directed verdict on the contract claim.

### III.

After a careful review of the record, we have determined that Cline's challenge to the jury instructions is also without merit. Accordingly, for the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

**2.** The special verdict finding the collision attributable to Mullis's negligence justifies Fleet's settlement with Exxon. Even in the absence of such a verdict, however, the reasonableness of Fleet's settlement is beyond question since un-

der North Carolina law, a vehicle operator has the duty not only to look, but to see what he ought to see. *Mims v. Dixon,* 272 N.C. 256, 158 S.E.2d 91 (1967).