**RYDER TRUCK RENTAL CO., INC., Plaintiff,**

v.

**UTF CARRIERS, INC., Andrew L. Johnson, Liberty Mutual Insurance Co. and National Union Fire Insurance Co. of Pittsburgh, Defendants.**

Civ. A. No. 88–0031–C.

United States District Court, W.D. Virginia, Charlottesville Division.

Aug. 3, 1989.

Nathan H. Smith, Eric S. Jensen, Sands, Anderson, Marks & Miller, Richmond, Va., for plaintiff.

Bruce D. Rasmussen, Charlottesville, Va., for defendants.

Robert C. Metcalf, Parker, Pollard & Brown, P.C., Richmond, Va., for Johnson.

John K. Taggart, III, Charlottesville, Va., for UTF & NUFI.

Kenneth Miller, Richmond, Va., for Liberty Mut.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This action for declaratory judgment is brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201–2202. The matter comes before the court on cross motions for summary judgment filed by the plaintiff and the defendants.[1] For the reasons stated *infra*, the plaintiff's motion for summary judgment is granted in part; the defendants' motions for summary judgment are denied.

### I.

The following facts are undisputed by the parties. Defendant UTF Carriers, Inc. (hereinafter "UTF-lessee") is a common carrier incorporated in the State of Delaware and operating interstate under the authority of the Interstate Commerce Commission ("ICC"). On June 18, 1982, Saunders Leasing System, Inc., ("Saunders") entered into a contractor operating agreement ("the lease") with UTF-lessee. The lease, designating Saunders as the "contractor" and UTF-lessee as the "carrier," provided that Saunders would lease tractor units and drivers to UTF-lessee, who would in turn provide the trailers to be pulled by the leased tractors.

Saunders later changed its corporate name to Saunders System, Inc. ("Saunders System"), effective January 1, 1985. Saunders System then merged with Ryder-lessor Truck Rental, Inc. (hereinafter "Ryder-lessor") on October 31, 1986. The court will hereafter refer to Saunders and Saunders Systems simply as Ryder-lessor, their successor in interest and the sole plaintiff in this action.

The lease between UTF-lessee and Ryder-lessor contained several provisions relating to the parties' obligations to provide insurance coverage. One required UTF-lessee to maintain, at its expense, liability insurance for any injuries to the general public.[2] Another required Ryder-lessor to maintain a liability policy which would cover certain injuries to the general public incurred while the tractor trailer was not being used in performance of a "trip" under the agreement.[3] The lease also specifically provided that drivers furnished by Ryder-lessor were to be considered employees of Ryder-lessor, not UTF-lessee.[4]

Pursuant to the lease, Ryder-lessor furnished UTF-lessee with a tractor and a driver, Norwin Darthard. On November 11, 1986, a UTF-lessee dispatcher instructed Darthard to haul an empty UTF-lessee trailer from Linwood, North Carolina, to Scottsville, Virginia. During this trip, Darthard was allegedly involved in an accident which seriously injured defendant Andrew Johnson.[5]

In its motion for declaratory judgment, Ryder-lessor asks this court first to rule that it was under no obligation to provide insurance coverage for any damages alleg-

---

1. The court notes that the pleadings in this case often made it difficult for this court to follow the arguments being advanced. For example, in plaintiff Ryder's memorandum of January 18, 1989, in this action, No. 88–0031–C, the defendant UTF is consistently referred to as "plaintiff." This misidentification is obviously confusing to anyone reading this particular pleading.

2. Paragraph 10 provides in pertinent part that: Pursuant to the rules and regulations of the Interstate Commerce Commission or other regulatory agency, CARRIER shall maintain at its own expense public liability ... insurance coverage as concerns ... the general public; however, CONTRACTOR shall indemnify and be liable to CARRIER for the first Five Hundred Dollars ($500.00) of any loss or damage to third persons ... which results from the operations of CONTRACTOR, its agent or employees.

3. Paragraph 8 provides in pertinent part that: the CONTRACTOR agrees, at its expense, to carry bobtail and deadhead insurance coverage with respect to public liability and property damage ... as concerns all Equipment hereunder when used not in performance of a trip under this Agreement ...

4. Paragraph 6(A) provides that "drivers ... are and shall remain the employees of the CONTRACTOR." Paragraph 19 provides that "neither the CONTRACTOR nor its employees are to be considered employees of CARRIER at any time under any circumstances or for any purpose."

5. This declaratory judgment action stems from a separate civil action brought by defendant Johnson, styled *Andrew L. Johnson v. Norwin Darthard et al.*, Civil Action No. 88–0004–C.

edly caused by Darthard while he was hauling the empty trailer to Virginia. Ryder-lessor also asks the court to find that Ryder-lessor is entitled to recover the costs, disbursements, and attorneys fees which it has incurred in its defense of Darthard in an underlying tort action brought by defendant Johnson. In its motion for summary judgment, Ryder-lessor asks the court to make two findings: (1) that relevant ICC regulations mandate that UTF-lessee be solely responsible to the public for any injuries caused by Darthard's alleged negligence and (2) that it had no duty to defend Darthard in the underlying tort claim.

Defendants UTF-lessee and National Union Fire Insurance Company of Pittsburgh ("National Union") have filed a counterclaim for declaratory judgment, asking this court to find that, under the plain terms of the lease, Darthard was Ryder-lessor's employee at all relevant times and Ryder-lessor is thereby subject to liability for damages caused by Darthard's alleged negligent operation of the tractor-trailer. UTF-lessee and National Union thus ask the court to find that applicable ICC regulations do not shield a lessor, such as Ryder-lessor, from liability to the public for the negligence of a leased driver, such as Darthard. Finally, UTF-lessee and National Union ask the court to rule that the lease does not affect their common law right of indemnity against Ryder-lessor.

Defendant Johnson has also moved for summary judgment on the issue of Ryder-lessor's liability to the public for injuries caused by Darthard's alleged negligence. Johnson, a defendant herein, is the plaintiff in a companion suit in this case, Civil Action No. 88–0004–C, and as plaintiff has filed in the companion case a proposed settlement order endorsed by his counsel and counsel for Ryder-lessor, so that Johnson's claim against Ryder-lessor herein, based on the same accident and same facts as his claim against Ryder-lessor in Civil Action No. 88–0004–C has become moot, this court having approved the settlement tendered in Civil Action No. 88–0004–C.

These issues have been thoroughly briefed and argued and are ripe for disposition by this court. The court will turn first to the issue of Ryder-lessor's liability for the negligent acts of Darthard.

## II.

In 1956, Congress amended the Interstate Common Carrier Act to require motor carriers to be fully responsible for the operation of vehicles certified to them in order to protect the public from certain abusive conduct which had resulted from the trucking industry's frequent use of leased or borrowed vehicles. *Empire Fire and Marine Ins. v. Guaranty Nat'l Ins.* 868 F.2d 357, 362 (10th Cir.1989); 49 U.S.C. §§ 10927(a)(2) and 11107(a)(4) (formerly 49 U.S.C. §§ 315 and 304(e)(2) respectively). As a result of this federal legislation, an authorized carrier is now required to:

> (4) have control and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary of Transportation on safety of operations and equipment, and with other applicable law *as if the motor vehicles were owned by the motor carrier.*

49 U.S.C. § 11107(a)(4) (emphasis added).

Pursuant to this statutory mandate, the ICC has promulgated specific regulations which govern leasing agreements between authorized interstate carriers and contractors. These agency regulations are constitutional, *American Trucking Ass'n v. United States,* 344 U.S. 298, 312, 73 S.Ct. 307, 315, 97 L.Ed. 337 (1953), and have the force and effect of law. *E.g., Simmons v. King,* 478 F.2d 857, 867 (5th Cir.1973). One such regulation requires that the written lease, which "shall be adhered to and performed by the authorized carrier," contain the following provision:

> (c) *Exclusive possession and responsibilities*—(1) The lease shall provide that the authorized carrier lessee shall have *exclusive* possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume *complete* responsibility for

the operation of the equipment for the duration of the lease.[6]

49 C.F.R. § 1057.12 (emphasis added).

In *Proctor v. Colonial Refrigerated Transp., Inc.,* 494 F.2d 89, 91 (4th Cir. 1974), the Fourth Circuit considered whether the lessee motor carrier, operating under a certificate from the ICC, is liable to an employee of a lessor for injuries resulting from the negligence of the lessor in the operation of his equipment in the business of the lessee-carrier. After examining the applicable regulatory language and statutory scheme,[7] the Fourth Circuit found that:

> These [ICC] regulations and the statute under which they were promulgated require and provide that under such lease arrangements, the lessee-carriers "will have full direction and control of such [leased] vehicles and will be *fully responsible* for the operation thereof ... *as if they were the owners of such vehicles ....*" These regulations were promulgated by the Commission to correct widespread abuses incident to the use of leased equipment by the carriers, and "the intent [of the regulations] was to make sure that licensed carriers would be *responsible in fact, as well as in law, for the ... supervision of borrowed drivers.*" The statute and regulatory pattern clearly eliminate the independent contractor concept from such lease arrangements and casts upon [the lessee-carrier] *full responsibility* for the negligence of [the lessor-contractor] as driver of the leased equipment. Any language to the contrary in the lease agreement would be violative of the spirit and letter of the federal regulations and therefore unenforceable.

*Proctor,* 494 F.2d at 91–92 (citations omitted) (emphasis added).

Courts from other circuits have examined the regulatory language and statutory scheme discussed *supra* and concluded that federal law requires a driver furnished by a lessor-contractor to be considered a statutory employee of the lessee-carrier, thereby preempting traditional common law doctrines of master-servant relationships and *respondeat superior* when the driver injures a member of the public while the lease is in effect. *Judy v. Tri–State Motor Transit Co.,* 844 F.2d 1496, 1501 (11th Cir. 1988) (citing *Price v. Westmoreland,* 727 F.2d 494, 497 (5th Cir.1984)); *Planet Ins. Co. v. Transport Indemnity,* 823 F.2d 285, 288 (9th Cir.1987).

The court has considered authority supporting the proposition that the applicable federal statute and ICC regulations preempt state law only to the extent that a state cannot completely absolve a carrier-lessee of liability stemming from a driver's negligence. Thus, a state is free to impose additional liability upon the contractor-lessor under common law doctrine such as *respondeat superior,* thereby allowing the contractor and the carrier to be found jointly liable to the public for the negligence of a leased driver. *See, Laux v. Juillerat,* 680 F.Supp. 1131, 1138 (S.D.Ohio 1987); *Simmons v. King,* 478 F.2d 857, 867 (5th Cir.1973).

---

**6.** The regulatory definition of "equipment" encompasses both the tractor and the trailer. 49 C.F.R. § 1057.2(b).

**7.** In its holding, the Fourth Circuit relied upon the statutory and regulatory scheme set out by 49 U.S.C. § 304(e)(2) and 49 C.D.R. § 1057.4(a)(4). *Proctor v. Colonial Refrigerated Transp., Inc.,* 494 F.2d 89, 91 n. 2 (4th Cir.1974). 49 U.S.C. § 304(e)(2) has been repealed as 49 U.S.C. § 11107(a)(4). Section 1057 was reorganized and revised, 44 F.R. 4681 (January 23, 1979), effective March 26, 1979, 44 F.R. 11070 (February 27, 1979). The former § 1057.4(a)(4), in force at the time of the *Proctor* decision, provided as follows:

(a) *Contract requirements.* The contract, lease, or other arrangement for the use of the equipment:

(4) *Exclusive possession and responsibilities.* Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease, or other arrangement ...

The court finds no substantive difference between this former regulation and the present § 1057.12(c)(1), set out *supra,* and thus finds the *Proctor* court's holding equally applicable to the present statutory and regulatory scheme.

First, this court will follow *Proctor*, the only Fourth Circuit authority which directly addresses the influence of ICC regulations on a carrier's liability for the negligence of a leased driver.[8] *Proctor* plainly held that the ICC regulations required the carrier to assume *"full responsibility* for the negligence of [the lessor] as driver of the leased equipment." *Proctor*, 494 F.2d at 92. The court is unable to read the possibility of joint and several liability into the carrier's requisite assumption of "full responsibility."

Second, even absent the Fourth Circuit's holding in *Proctor*, the court would decline to hold that Ryder-lessor and UTF-lessee may be found jointly liable for Darthard's negligence because the plain language of the regulation at issue precludes such a finding. The regulation requires that the carrier assume "complete responsibility" for the operation of the tractor-trailer for the duration of the lease. 49 C.F.R. § 1057.12(c)(1). Once again, this court is unable to harmonize "complete responsibility" with "joint liability"; consequently, any conflicting state law doctrine must give way to the federal statute and its regulatory scheme.

The court finds that UTF-lessee, as a common carrier operating interstate under the authority of the ICC, is solely liable to members of the public, such as Johnson, for any negligence imputed to Darthard as driver of the tractor-trailer during the operation of the lease. The provisions of the lease which maintain that Ryder-lessor's drivers shall not be considered employees of UTF-lessee "at any time under any circumstances or for any purpose"[9] are plainly "violative of the spirit and the letter of the federal regulations and therefore unenforceable." *Proctor*, 494 F.2d at 92.

### III.

In its motion for summary judgment, Ryder-lessor also asks this court to find that it has no duty to defend Darthard, the driver it leased to UTF-lessee, in a separate civil action brought by Johnson, a member of the public, for injuries allegedly caused by Darthard's negligent operation of the tractor-trailer during the operation of the lease.

■ The court must first note the peculiarity of Ryder-lessor's posture in making this request. The concept of "duty to defend" is rooted in the field of insurance law and results from an insurer's contractual obligation to its insured under a liability policy. The "duty to defend" is thus incumbent upon the insurer, not the insured. The insurer is generally bound to defend the insured against all suits alleging facts and circumstances covered by the policy, even though the suit may be groundless. 7C J. Appleman, Insurance Law and Practice § 4682 at 16 (Berdal ed. 1979).

In this matter, Ryder-lessor has stated in Paragraph 22 of its second amended motion for declaratory judgment that, at the time of the alleged accident, it was insured by an automobile liability policy with Old Republic Insurance Company (Old Republic), which insurance company would thus have such duty to defend as the policy might provide. Old Republic is not a party to this action, and this court will not interpret the rights and obligations of such a non-party. The court will therefore not address any dispute which may exist between Old Republic and Ryder-lessor, between Old Republic and Darthard, also a non-party, or between Old Republic and National Union. These disputes, if they exist, are not presently before the court. The court will, however, declare the respective rights and obligations of Ryder-lessor and UTF-lessee pursuant to the leasing agreement to which both parties contracted. In doing so, the court will first consider which party agreed to provide liability insurance for the accident caused by Darthard's alleged negligence.

■ The lease plainly specifies the parties' respective obligations to provide liability insurance coverage. Paragraph 10 re-

---

8. The preemptive effect of ICC regulations was not considered by the court in *Fleet Trans. Co., Inc. v. Mullis,* 727 F.2d 327 (4th Cir.1984).

9. *See supra* Note 3.

quires that UTF-lessee "shall maintain at its own expense public liability ... insurance coverage as concerns ... the general public." This provision is consistent with the ICC's requirement that all certified interstate carriers maintain insurance or other form of surety "conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or death of any person resulting from the negligent operation, maintenance, or use of motor vehicles" under the carrier's permit. 49 C.F.R. § 1043.1(a)(1). Paragraph 8 of the lease requires that Ryder-lessor "carry bobtail and deadhead insurance coverage with respect to public liability ... as concerns all Equipment hereunder when used not in performance of a trip under this Agreement ..." [10] Paragraphs 8 and 10 contain the only provisions in the lease concerning the parties' obligations to maintain liability insurance policies.

In Paragraph 8, Ryder-lessor agrees to provide liability insurance only for those accidents which satisfy two requirements. First, the driver must have been "bobtailing" or "deadheading"; Ryder-lessor admits that Darthard was "deadheading" at the time of the alleged accident on November 11, 1986. Second, the accident must have occurred when the equipment was not being used in performance of a "trip under this Agreement". Unfortunately, neither the leasing agreement itself nor other authority offers an agreed-upon definition of "trip". As a result, the court relies upon the plain language of the lease to find that a driver is performing a "trip under this Agreement" when he is operating the tractor-trailer in satisfaction of the leasing agreement. *See generally Mensing v. Rochester Cheese Express, Inc.*, 423 N.W.2d 92, (Minn.Ct.App.1988).

UTF-lessee admits that on November 11, 1986, one of its dispatchers told Darthard to "take [his] empty trailer up to Scottsville and drop it and pick up the loaded trailer and go to Ardmore, Oklahoma." Memorandum of UTF-lessee and National Union in Response to Plaintiff's Memorandum in

Support of Motion for Summary Judgment, p. 3 and Exhibit B. UTF-lessee also admits that it ultimately paid Ryder-lessor for the mileage to Scottsville. *Id.* at 4. In light of these facts, the court finds that Darthard was operating the tractor-trailer in satisfaction of the leasing agreement as he drove to Scottsville. He was thus performing a "trip" under the agreement, so that the second requirement as to Ryder-lessor's obligation to provide liability insurance under paragraph 8 has not been met.

As a result of this finding, the court holds that the lease does not obligate Ryder-lessor to maintain a liability policy which would cover the injuries to Johnson resulting from Darthard's alleged negligence; instead, Paragraph 10 of the lease plainly obligates UTF-lessee, in accordance with its responsibilities under applicable ICC regulations, to provide such coverage. In making this finding, the court has relied solely upon the leasing agreement, or contract between Ryder-lessor and UTF-lessee. The court has not considered the scope of coverage including the duty to defend *vel non,* actually provided by any liability policies held by the parties' respective insurers.

## IV.

Ryder-lessor has also asked this court to find that the indemnity agreement contained in the lease represents the total liability which Ryder-lessor must pay UTF-lessee should UTF-lessee incur any liability to Johnson for Darthard's alleged negligent operation of the tractor-trailer. The indemnity agreement, found in Paragraph 10 of the lease provides that:

CARRIER shall maintain at its own expense public liability ... insurance coverage as concerns ... the general public; however, CONTRACTOR shall indemnify and be liable to CARRIER for the first Five Hundred Dollars ... of any loss or damage to third persons ... which re-

10. In the parlance of the trucking industry, "to deadhead" is to haul an empty trailer; "to bob-   tail" is to haul no trailer at all.

sults from the operations of CONTRACTOR, its agent or employees.

Paragraph 18 of the lease states that the "agreement constitutes the entire agreement and understanding between the parties and shall not be modified, altered, changed, or amended in any respect unless in writing and signed by both parties."

In *Transamerican Freight v. Brada Miller*, 423 U.S. 28, 41, 96 S.Ct. 229, 235, 46 L.Ed.2d 169 (1975), the Supreme Court found that the existence of an indemnification clause in a leasing agreement directed to the contractor-lessor's negligence is not in conflict with the federal statutory and regulatory scheme requiring the carrier to maintain responsibility for the operation of the vehicle. The court stated that the "mere presence of such a clause as the one here—that the lessor is to bear the burden of its own negligence—does not, in and of itself, offend the regulations so long as the lessee does not absolve itself from the duties to the public and the shippers imposed on it by the Commission's regulations." *Id.* at 40, 96 S.Ct. at 235. The court went on to point out that "although one party is required by law to have control and responsibility for conditions of the vehicle, *and to bear the consequences of any negligence,* the party responsible in law to the injured or damaged person may seek indemnity from the party responsible in fact." *Id.* (emphasis added).

■ The Fourth Circuit has held that the ICC regulations are intended to "make sure that licensed carriers [will] be responsible in fact, as well as in law, for ... the supervision of borrowed drivers." *Proctor,* 494 F.2d at 92. Thus, by themselves, the regulations cast "full responsibility" upon the carrier for the negligence of the driver of the leased equipment. *Id.* However, the Supreme Court *held* that although a carrier must remain exclusively responsible to the public for injuries caused by a negligent driver, the carrier and contractor are free, within limits, to allocate responsibility for the driver's negligence between themselves. *Transamerican Freight,* 423 U.S. at 40, 96 S.Ct. at 235. Thus, an indemnity agreement providing

that a contractor repay a carrier for liability incurred due to the negligence of its leased driver is consistent with the intent of the federal regulations.

■ The leasing agreement between Ryder-lessor and UTF-lessee, unlike the agreement examined in *Transamerican Freight,* contains no indemnity clause by which Ryder-lessor agrees to assume liability for the negligence of its leased drivers. To the contrary, Ryder-lessor agrees to indemnify UTF-lessee only for the first $500.00, later amended to $1,000.00, of any loss to third persons resulting from its operation of the vehicle. This is the only provision in the lease pertaining to Ryder-lessor's obligation to indemnify UTF-lessee for damages paid to third persons. Paragraph 18 indicates that Ryder-lessor and UTF-lessee meant the lease to embody the "entire agreement and understanding" between them.

The court thus finds that Ryder-lessor is obliged to indemnify UTF-lessee only for the first $1,000.00 of any damages UTF-lessee must pay to injured members of the public, such as Johnson. Except for this limited liability assumed by Ryder-lessor pursuant to the agreed-upon indemnity clause, UTF-lessee remains fully responsible, in law and in fact, for the negligent operation of the tractor-trailer. *Proctor,* 494 F.2d at 92.

### V.

In summary, the court has made three findings. First, UTF-lessee is solely liable to members of the public, including Johnson, for any injuries caused by Darthard's alleged negligent operation of the tractor-trailer on November 11, 1987, as he drove from Linwood, North Carolina, to Scottsville, Virginia. Second, UTF-lessee was obligated to maintain a liability insurance policy which would cover injuries to the public caused by Darthard's alleged negligence. The "bobtail/deadhead" insurance which Ryder-lessor agreed to provide pursuant to Paragraph 8 of the lease does not obligate Ryder-lessor to maintain a liability policy which would cover Darthard's actions on the trip to Scottsville. Third, the indemnity

clause found in the contractor's operating agreement, as amended, sets forth the complete and exclusive liability owed by Ryder-lessor to UTF-lessee for the allegedly negligent acts of Darthard, its leased driver.

Since Ryder-lessor's insurer is not a party to this action and thus not before the court, it would be improper for this court to rule on the question of Ryder-lessor or its insurer's possible duty to defend Darthard in a civil action arising from his allegedly negligent operation of the tractor-trailer on November 11, 1987, trip to Scottsville, Virginia.

Since all issues remaining between the parties are thus resolved, this action shall be dismissed and stricken from the docket of this court.

An appropriate Order shall this day issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is

ADJUDGED AND ORDERED as follows:

1. The motion for summary judgment filed by defendant Andrew Johnson shall be, and it hereby is, denied.

2. The motion for summary judgment filed by defendants UTF and National Union Fire Insurance Company of Pittsburgh shall be, and it hereby is, denied.

3. The motion for summary judgment filed by the plaintiff shall be, and it hereby is, granted in part as to vicarious liability. The court declines to rule on plaintiff's motion for summary judgment as to duty to defend.

4. Since all issues between the parties are thus resolved, this action shall be, and it hereby is, dismissed and stricken from the docket of this court.