Joan BAKER, et al., Plaintiffs,

v.

ROBERTS EXPRESS, INC.,
et al., Defendants.

No. C–1–91–631.

United States District Court,
S.D. Ohio, W.D.

June 26, 1992.

Michael Patrick Kelly, Cassity, Kelly & Wallace, Mt. Orab, Ohio, Mike Dean, London, Ky., for plaintiffs.

William Malcolm Cussen, Lindhorst & Dreidame, Cincinnati, Ohio, for defendants.

Mark D. Fischer, Moore & Fischer, Cincinnati, Ohio, for intervenor-plaintiff.

## ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court for consideration of the defendants' motion for summary judgment (doc. 15). The plaintiffs responded in opposition to the motion and filed a cross motion for partial summary judgment (doc. 19), and the defendants replied (doc. 18). For the reasons set forth below, the defendants' motion for summary judgment is hereby denied and the plaintiff's cross motion for partial summary judgment is hereby granted.

## BACKGROUND

This is a diversity action which arose from a traffic accident which occurred in Astabula County, Ohio, on September 16, 1990. The defendant Roberts Express, Inc. ("Roberts") is a common carrier incorporated in the State of Ohio and operating interstate under the authority of the Interstate Commerce Commission ("ICC"). On April 2, 1990, defendant Arthur Camell entered into an "Agreement for Leased Equipment and Independent Contractor Services" ("the lease") with Roberts.

The lease contained several provisions that addressed the relationship between the two parties.[1] One provision required Roberts to maintain, at its own expense, liability insurance for any injuries to the public.[2] The same provision, however, required Camell to maintain insurance which would cover, among other things, non-trucking uses which result in bodily injury and property damage.[3] The lease also specified that the drivers provided by Camell were to be considered employees of Camell, not Roberts.[4]

---

1. The lease designates Arthur Camell as OWNER and Roberts Express as ROBERTS.

2. Paragraph 3.01 of the lease provides in pertinent part that:

    ROBERTS shall provide, at its expense, insurance coverage for the protection of the public pursuant to 49 U.S.C. 10927....

3. Paragraph 3.01 of the lease provides in pertinent part that the:

    OWNER shall provide, at its expense, and keep in force at all times during the term of this Agreement, any and all insurance necessary for the safe and efficient performance of OWNER's obligations under this Agreement including, but not limited to, the following: ... (c) Insurance coverage for non-trucking use (Bobtail/Deadhead) on the Lease Vehicle in an amount of not less than Five Hundred Thousand Dollars ($500,000) combined single limit bodily injury and property damage.

4. In Section I, Intention of the Parties, the lease provides that:

    Neither OWNER nor any of its employees or agents shall be considered to be employees of ROBERTS or of ROBERTS' customers at any time, under any circumstances, for any purpose whatsoever and nothing in this Agreement shall be construed as inconsistent with that relationship.
    Additionally, Paragraph 2.07 of the lease provides in pertinent part: "OWNER shall furnish, at its expense, drivers for the Leased Vehicle...."
    Finally, Paragraph 2.09 of the lease provides in pertinent part that:
    In the event OWNER employs drivers other than himself to perform its contractual obli-

Pursuant to the lease, Arthur Camell provided Roberts a van and a driver, defendant Charles Camell, in order to make a delivery for Roberts. On September 16, 1990, Charles Camell was returning to Wisconsin after making a delivery in Old Town, Maine [5] when he was involved in an accident with the plaintiffs' vehicle on Interstate 90 in Astabula County, Ohio.

In its motion for summary judgment, Roberts maintains that the relationship between Roberts and Arthur Camell was that of an independent contractor and that as a result, Roberts is not responsible for the act of Charles Camell. Accordingly, Roberts argues that it is entitled to summary judgment as a matter of law.

The plaintiffs have filed a cross motion for partial summary judgment on the issue of Roberts' vicarious liability for any negligence attributable to Charles or Arthur Camell. The plaintiffs maintain that as a federally licensed motor carrier, Roberts is required to maintain liability insurance to protect the public from accidents such as the one in this case. The plaintiffs further maintain that federal statutes and regulations make Roberts responsible for the negligence of the Arthur or Charles Camell.

## STANDARD

The narrow question that we must decide on a motion for summary judgment is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(b). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inference drawn therefrom must be

read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979) (emphasis original), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.* (*quoting* Rule 56(c), Fed.R.Civ.P.).

Summary judgment "must be used only with extreme Caution for it operates to deny a litigant his day in court." *Id.* The Supreme Court elaborated upon this standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) as follows:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial....

*Id.* at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate if a dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## DISCUSSION

### I. Roberts Express' Liability

Congress amended the Interstate Common Carrier Act, in 1956, in order to protect the public from abusive conduct of interstate motor vehicle carriers. 49 U.S.C.

---

gations under this Agreement, all such drivers shall be OWNER's employees or agents exclusively, and shall be subject solely to OWNER's direction and control including the selection, hiring, firing, supervising, instructing, training, discipline and setting of wages, hours and working conditions.

**5.** Roberts has admitted in interrogatories that the van driven by Charles Camell on September 16, 1990 was being operated in furtherance of the lease between Roberts and Arthur Camell.

§§ 10927(a)(2) and 11107(a)(4) (formerly 49 U.S.C. §§ 315 and 304(e)(2) respectively); *Price v. Westmoreland,* 727 F.2d 494, 496 (5th Cir.1984); *Ryder Truck Rental Co., Inc. v. UTF Carriers, Inc.,* 719 F.Supp. 455, 457 (W.D.Va.1989), *affirmed,* 907 F.2d 34 (4th Cir.1990). The amendments were intended to protect the public from the abuse and confusion surrounding responsibility for accidents which involved a vehicle leased to an interstate carrier. *Empire Fire and Marine Ins. Co. v. Guaranty Nat'l Ins. Co.,* 868 F.2d 357, 362 (10th Cir.1989). Presently, an authorized carrier is required to:

(4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary of Transportation on safety of operations and equipment, and with other applicable law *as if the motor vehicles were owned by the motor carriers.*

49 U.S.C. § 11107(a)(4) (emphasis added).

In response to this legislation, the ICC promulgated certain regulations which mandated that the written lease for interstate common carriers contain a provision which requires the carrier-lessee to "assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 1057.12(c)(1). Additionally, the regulation required the carrier-lessee to have "*exclusive* possession, control, and use of the equipment for the duration of the lease." *Id.* (emphasis added).

In examining the applicable statutes and regulations, other circuits have concluded that "federal law requires a driver furnished by a lessor-contractor to be considered a statutory employee of the lessee-carrier, thereby preempting traditional common law doctrines of master-servant relationships and *respondeat superior* when the driver injures a member of the public while the lease is in effect." *Ryder Truck Rental,* 719 F.Supp. at 458. *See Judy v. Tri-State Motor Transit Co.,* 844 F.2d 1496, 1501 (11th Cir.1988); *Planet*

*Ins. Co. v. Transport Indemnity Co.,* 823 F.2d 285, 288 (9th Cir.1987); *Price v. Westmoreland,* 727 F.2d 494, 497 (5th Cir.1984). In *Proctor v. Colonial Refrigerated Transp., Inc.,* 494 F.2d 89 (4th Cir.1974), the Fourth Circuit ruled that:

"the intent [of the regulations] was to make sure that licensed *carriers would be responsible in fact, as well as in law, for ... the supervision of borrowed drivers.*" The statute and regulatory pattern clearly eliminates the independent contractor concept from such lease arrangements and casts upon [the carrier-lessee] full responsibility for the negligence of [the driver] of the leased equipment. *Any language to the contrary in the lease agreement would be violative of the spirit and letter of the federal regulations and therefore unenforceable.*

*Id.* at 92 (emphasis added) (*quoting Alford v. Major,* 470 F.2d 132, 135 (7th Cir.1972)). Additionally, in *Laux v. Juillerat,* 680 F.Supp. 1131 (S.D. Ohio 1987), *affirmed* 860 F.2d 1079 (6th Cir.1988), the court ruled, as a conclusion of law, that federal regulations require a carrier-lessee to assume legal control of the leased vehicle and driver. Thus, the carrier-lessee should be held vicariously liable for the negligence of the driver and the resulting damages. *Id.* at 1142.

Accordingly, this Court finds that the ICC regulations enacted pursuant to the Interstate Common Carrier Act create an irrebuttable presumption of an employment relationship between a driver of a leased vehicle furnished by a contractor-lessor and a carrier-lessee. This employment relationship is known as statutory employment. Any negligence on the part of the driver of the leased vehicle is imputed to the carrier-lessee as a matter of law. The common law doctrines of master-servant, *respondeat superior* and independent contractor are preempted by these regulations.[6]

---

**6.** Even though, as addressed above, this matter is preëmpted under federal law, a similar result would be obtained under Ohio law. In 1991, the Ohio Supreme Court ruled on a question that is analogous to the one now before this Court. *Wyckoff Trucking, Inc. v. Marsh Bros. Trucking Service, Inc.,* 58 Ohio St.3d 261, 569 N.E.2d 1049 (1991). In *Wyckoff,* the court

Accordingly, the plaintiff is entitled to partial summary judgment on their cross motion for summary judgment regarding the vicarious liability of Roberts Express for any negligence that may be attributable to Charles or Arthur Camell. Consequently, Roberts' Express motion for summary judgment is hereby denied.

## II. Roadway Services Relationship to Roberts Express

 The defendant Roadway Services ("Roadway"), the holding company of Roberts, seeks summary judgment in its favor arguing that the mere fact that a parent corporation owns all the stock in a subsidiary does not make it responsible for any claims asserted against that subsidiary. The plaintiff, in response, seeks additional time in which to complete discovery regarding the relationship between Roadway and Roberts and to present essential facts to support its opposition to Roadway's motion.

This Court, in its preliminary pretrial order of March 2, 1992, set a discovery cutoff date of July 1, 1992. Because of the shortness of time, the discovery cut-off is extended to August 1, 1992 so that the plaintiff has adequate time to seek discovery regarding the relationship between Roadway and Roberts.

Accordingly, the motion of Roadway Services is hereby denied without prejudice with leave to refile after the close of discovery.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is hereby denied and the plaintiffs' cross motion for partial summary judgment is hereby granted.

SO ORDERED.

strictly construed 49 C.F.R. § 1057.12(c)(1) so as to make the driver of a leased vehicle a statutory employee of the carrier-lessee.

Specifically, the Ohio Supreme Court held that the federal regulation "creates an irrebuttable presumption of an employment relationship between the carrier-lessee and the driver of a vehicle that displays the I.C.C. identification numbers of the carrier-lessee." *Id.* at 266–67, 569 N.E.2d at 1054. The court accepted the view of a majority of courts that "if the driver is negligent, the carrier-lessee is liable *as a matter of law* for accidents that occur while a lease is still in effect and its I.C.C. placards are displayed on the vehicle." *Id.* at 265, 569 N.E.2d at 1053 (emphasis added).

Finally, with regard to the various common-law doctrines of liability, the court held that "in tort causes of action involving leased vehicles of interstate motor carriers, primary liability shall be determined with regard to Interstate Commerce Commission regulations rather than the common-law doctrines of *respondeat superior,* master-servant, independent contractor and the like." *Id.* at 266, 569 N.E.2d at 1053–54.